### 39412, 39413.   THOMAS v. THE STATE (two cases).

DECIDED APRIL 4, 1962—REHEARING DENIED APRIL 17, 1962.

*Emanuel Lewis, Shelby Myrick, Lewis, Wylly & Javetz,* for plaintiff in error.

*Andrew J. Ryan, Jr., Solicitor-General, Sylvan Garfunkel,* contra.

NICHOLS, Presiding Judge. There being no issue with regard to the defendant's having committed the crimes, the sole question for determination here is whether or not the defendant was insane at the time the crimes were committed. The test to be applied in this State is whether the accused had "reason sufficient to distinguish between right and wrong in relation" to the par-

ticular offense committed. *Roberts v. State,* 3 Ga. 310; *Hubbard v. State,* 197 Ga. 77 (28 SE2d 115).

The defense of insanity having been made under the general plea of not guilty, the burden rested upon the defendant, under the presumption of sanity (see *Carter v. State,* 56 Ga. 463, 467), to show by a preponderance of the evidence, but not beyond a reasonable doubt, that he was not mentally responsible at the time of the commission of the crimes. *Rozier v. State,* 185 Ga. 317 (195 SE 172); *Hubbard v. State,* 197 Ga. 77, supra.

The defendant's contention, according to his statement on the trial of the case, was that he was subject to having "spells" or "fits" at times, and that he remembered nothing when he was laboring under one of these "spells" or "fits"; he contended that he remembered nothing about the events of September 10, 1955, the day of the crimes, and that he remembered nothing until he found himself in the State Hospital at Milledgeville many months after the crimes had been committed.

There is testimony in the record by two psychiatrists who examined the defendant subsequently to the date the crimes were committed that in their opinions the defendant did not know the difference between right and wrong on September 10, 1955, the date the crimes were committed. One of the psychiatrists, Dr. Thomas B. Craig, also testified that the defendant's record showed that he drank considerable alcohol during his life and that his "fits" and "spells" could be produced by excessive drinking.

Mary Martin Thomas, the prosecutrix in the assault with intent to murder indictment, who was living with the defendant at the time the crimes were committed, testified that on the day in question, i. e., September 10, 1955, the defendant, along with herself and the deceased, had consumed two quarts of beer, and that then the defendant had left home and did not return until just before the crimes were committed. Other witnesses also testified in the record that the defendant suffered from these seizures of "spells" or "fits."

The record also discloses that the defendant was injured in an explosion while he was in the service and as a result of same was a patient in a Government hospital in Massachusetts for

eight months following his injury; also Mary Martin Thomas testified that he had spent some two months in a mental hospital in Tuskegee, Alabama, as well as having been a patient also in the Marine Hospital in Savannah, Georgia.

Ben Gernade, a witness for the State, testified that on September 10, 1955, he was a cab driver in Savannah, Georgia, and that about three o'clock in the afternoon on that date, the defendant had sought to hire him to drive him to the other side of Statesboro, Georgia, but that he had declined to do so. He stated that the defendant had told him that he had killed a man; that the defendant "looked rather stupid" to him, and that he thought the defendant was just another "Saturday night drunk." This testimony contradicts defendant's statement while on the stand to the effect that he did not remember anything from the date the crimes were committed until many months later, and after he had been committed to Milledgeville State Hospital.

The defendant relies heavily upon the case of *Handspike v. State*, 203 Ga. 115 (45 SE2d 662), but in that case, contrary to the case at bar, the psychiatrist had examined the defendant and determined he was insane prior to the homicide. Here both psychiatrists examined the defendant only after the commission of the crimes.

In *Choice v. State*, 31 Ga. 424, in headnotes 1, 7 and 8, it was held: "1. C. is indicted for murder. The plea of insanity is interposed: *Held,* That it is not competent to prove, by a subsequent conversation with the prisoner, that he was insane at the time the homicide was committed. Neither is it allowable to give in evidence the tests that were applied during that interview in order to test prisoner's sanity at the time the act was done." "7. If the condition of a man's mind, when unexcited by liquor, is capable of distinguishing between right and wrong, reasoning and acting rationally, and he voluntarily deprives himself of reason by intoxication, and commits an offense while in that condition, he is criminally responsible for it." "8. Nor does it make any difference that a man, either by former injury to the head or brain, or constitutional infirmity, is more liable to be maddened by liquor than another man. If he has legal memory and discretion when sober, and voluntarily

deprives himself of reason, he is responsible for his acts while in that condition. But if a man be insane when sober, the fact that he increased the insanity by the super-added excitement of liquor, makes no difference. An insane man is irresponsible, whether drunk or sober."

Applying the law enunciated above to the facts in the case sub judice the jury was authorized under the evidence to find that the defendant, at the time the crimes were committed, knew right from wrong, or that even conceding there was evidence in the record of a former injury to his head or brain, yet, he had sufficient legal memory and discretion, when sober, to distinguish between right and wrong and that he deprived himself of rationality and reason by voluntarily consuming intoxicants and therefore was criminally responsible for his acts.

*Judgments affirmed. Frankum and Jordan, JJ., concur.*