### Zach Colbath *v.* The State.

1. DRUNKENNESS. — Though voluntary intoxication constitutes no defense for crime, yet, where the crime of murder consists of degrees, as in this state, and if the question be between the degrees, the fact of drunkenness is admissible in evidence to prove the mental *status* of the accused, and to enable the jury to determine whether or not the killing resulted from a deliberate and premeditated purpose.

2. SAME. — To preserve his rationality is a duty which every one owes to others and to society; and no injustice is done by holding one amenable for his acts done in a condition of voluntary intoxication. See the opinion *in extenso* on this subject.

APPEAL from the District Court of Bexar. Tried below before the Hon. G. H. NOONAN.

A former trial of this case is reported at page 291 of the 2d volume of these Reports. The facts of the homicide are detailed in the same volume, at page 93, in the report of the case of Boyett, who was indicted jointly with the present appellant.

At his former trial the appellant was convicted of murder

in the first degree, and adjudged to suffer death. At the trial from which the present appeal results, he was also convicted of murder in the first degree ; but, as the homicide was committed while the Constitution of 1869 was in force, the jury, exercising the power conferred upon them by it, saw fit to substitute the penitentiary for life in lieu of the penalty of death.

No brief for the appellant.

*W. B. Dunham*, for the State.

ECTOR, P. J.   The instructions given by the court to the jury, on the trial of this case, in relation to murder, and the difference between murder in the first and murder in the second degrees, are mainly taken from the statute and from the decisions of the Supreme Court and the Court of Appeals.   They have been prepared with unusual care, and are, in all respects, adapted to the circumstances of the case.   No exceptions were taken to them, nor are they mentioned in defendant's assignments of error.   We do not think that the court erred in refusing certain instructions that were asked by the defendant, a portion of which had already been given by the court in its main charge, and the others did not embody the law of the case.

There is nothing in the evidence to show that defendant's conduct was not entirely under the control of his will, or which would render it possible for the jury to find that he did not intend to kill the deceased at the time he shot him. The commission of crime is so often attendant upon, and the consequence of, drunkenness, that the law concerning drunkenness may now be considered well defined.   We find it laid down as early as the reign of Edward VI. (1548), that " if a person that is drunk kills another, this shall be a felony, and he shall be hanged for it, and yet he did it

through ignorance, for when he was drunk he had no understanding nor memory; but, inasmuch as that ignorance was occasioned by his own act and folly, and he might have avoided it, he shall not be privileged thereby." Plowd. 19. The same doctrine is laid down by Coke in the "Institutes," where he calls a drunkard *voluntarius dæmon*, and declares that "whatever hurt or ill he doeth, his drunkenness doth aggravate it." 3 Co. 46.

That great and humane judge, Sir Matthew Hale, in his "History of the Pleas of the Crown," written 200 years ago, also lays down the same doctrine. "The third kind of *dementia*," he says, "is that which is *dementia affectata*, namely, drunkenness. This vice doth deprive men of the use of reason, and puts many men into a perfect, but temporary, phrensy; and, therefore, according to some civilians, such a person committing homicide shall not be punished simply for the crime of homicide, but shall suffer for his drunkenness, answerable to the nature of the crime occasioned thereby, so that yet the primal cause of the punishment is rather drunkenness than the crime committed in it; *but, by the laws of England*, such a person shall have no privilege by his voluntary contracted madness, but shall have the same judgment as if he were in his right senses." He states two exceptions to the rule: one where the intoxication is without fault on his part — as, when it is caused by drugs administered by an unskillful physician; and the other when the indulgence in habits of intemperance has produced permanent mental disease, which he calls "fixed phrensy." 1 Hale, 32.

Coming down to more modern times, we find the principle insisted upon by the enlightened Sir William Blackstone. "The law of England," he says, "considering how easy it is to contract this excuse, and how weak an excuse it is (though real), will not suffer any man thus to privilege one crime by another." 4 Bla. Com. 26.

We could multiply citations of modern cases upon this doctrine, that mental alienation produced by drinking intoxicating liquors furnishes no immunity for crime. *Rex* v. *Meakin*, 7 Car. & P. 298, and *Rex* v. *Thomas*, 7 Car. & P. 817, may be mentioned; and in this country, *United States* v. *Drew*, 5 Mason, and *United States* v. *McGlue*, 1 Curt., maintain the same principle, upon the authority of Judge Story and Judge Curtis, of the Supreme Court of the United States.

These last two cases are interesting, not only for stating the general principle, but for confirming the distinction laid down so long ago by Sir Matthew Hale — that when mental disease, or, as he terms it, " fixed phrensy," is shown to be the result of drunkenness, it is entitled to the same consideration as insanity arising from any other cause. The first of them was a case of *delirium tremens*, and Story directed an acquittal on that account. Judge Story says: " We are of the opinion that the indictment upon these admitted facts cannot be maintained. The prisoner was unquestionably insane at the time of committing the offense. And the question made at the bar is whether insanity whose remote cause is habitual drunkenness is, or is not, an excuse for the commission of every crime, because the party has not the possession of that reason which includes responsibility. An exception is when the crime is committed by a party while in a fit of intoxication, the law not permitting a man to avail himself of the excuse of his own gross vice and misconduct to shelter himself from the legal consequences of such crime. But the crime must take place and be the immediate result of the fit of intoxication and while it lasts, and not, as in this case, a remote consequence, superinduced by the antecedent exhaustion of the party, arising from gross and habitual drunkenness. * * * Had the crime been committed while Drew was in a fit of intoxication, he would have been liable to be convicted of

murder.   As he was not then intoxicated, but merely insane from an abstinence from liquor, he cannot be pronounced guilty of the offense."

In this country the same position as that maintained by Sir Edward Coke, Sir Matthew Hale, and Sir William Blackstone has been taken with marked uniformity, it being invariably held that voluntary drunkenness is no defense to the *factum* of guilt; the only point about which there has been any fluctuation being the extent to which evidence of drunkenness is receivable to determine the exactness of the intent, or the extent of the deliberation.   All agree that to disprove malice, drunkenness is certainly irrelevant.   While intoxication *per se* is no defense to the fact of guilt, yet, when the question of intent or premeditation is concerned, evidence of it is admissible for the purpose of determining the precise degree.   In all cases under statutes like ours, where murder is divided into two degrees, and when the question is between murder in the first and murder in the second degree, the fact of drunkenness may be proved, to shed light upon the mental *status* of the offender, and thereby enable the jury to determine whether or not the killing resulted from a deliberate and premeditated purpose.

In a very well-considered New York case of homicide, before the highest tribunal, Denio, J., says "that evidence of intoxication is admissible in a criminal prosecution as tending to show whether, and how far, the act was done in the heat of passion, and in the general explanation of the defendant's conduct; but the fact of voluntary intoxication will not reduce an act which in a sober man would be murder to the grade of manslaughter." *People* v. *Rogers*, 18 N. Y. 9.   We freely concur with this distinguished jurist when he says "there is, in truth, no injustice in holding a person responsible for his acts committed in voluntary intoxication.   It is a duty which every one owes to his fellowmen and to society, to say nothing of more solemn obliga-

tions, to preserve, so far as lies in his own power, the inestimable gift of reason. If it is perverted or destroyed by fixed disease, though brought on by his own vices, the law holds him not accountable. But if, by a voluntary act, he temporarily casts off the restraints of reason and conscience, no wrong is done him if he is considered answerable for any injury which in this state he may do to others or society."

The jury have found, and, as we think, upon sufficient evidence, that the prisoner intended to kill the deceased when he fired the fatal shot. They have further found that the killing of the deceased by the defendant did not result from a mere sudden and immediate design springing from an inconsiderate impulse, passion, or excitement, but from an act done in pursuance of a formed design of a sedate, deliberate mind to kill the deceased. We believe that the evidence discloses a case of murder in the first degree; and, upon the whole case, we are satisfied no error has been committed below, and no injustice done the defendant.

The judgment of the District Court is, therefore, affirmed.
*Affirmed.*