

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1620-12

**KODY WILLIAM FARMER, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### TARRANT COUNTY

**COCHRAN, J., filed a concurring opinion in which JOHNSON, J., joined.**

CONCURRING O P I N I O N

I concur in the majority's resolution of this appeal, but I cannot join its reasoning.

Texas, like most states, recognizes an affirmative defense of involuntary intoxication,[1] and

it applies even in DWI cases. Appellant offered evidence that he was involuntarily

intoxicated and requested instructions on that defense. I think that the trial judge erred in

---

[1] *Torres v. State*, 585 S.W.2d 746 (Tex. Crim. App. [Panel Op.] 1979); *see* Lewis Buttles, *Criminal Law–Defenses–Involuntary Intoxication Is a Defense in Texas*, 12 ST. MARY'S L.J. 232 (1980).

refusing to include any instruction on that defense. But appellant did not complain about the failure to give the "involuntary intoxication" charge on appeal. Instead, he complained about other jury instructions. I agree that appellant was not entitled to instructions on an involuntary act, therefore I concur with the majority on its resolution of the case.

I.

Appellant was charged with driving while intoxicated due to the introduction of one or more of three prescription medicines–zolpidem (Ambien), tramadol (Ultram), and carisoprodol (Soma). The evidence at trial showed that at about 8:00 a.m. one Saturday morning, Randall Cox was driving to a Boy Scout meeting when he saw appellant's SUV suddenly looming behind him on the freeway. Mr. Cox could not move out of the way fast enough to avoid being rear-ended by the speeding SUV.

After being hit, Mr. Cox pulled over, and waved to appellant to pull over as well. Appellant took a long time to pull over and stop. Mr. Cox walked up to appellant, who was "staggering and weaving" as he got out of his car. When Mr. Cox asked him for his insurance information, appellant gave him a business card instead. When he finally obtained appellant's driver's license, Mr. Cox looked on the back side for medical information because it seemed that appellant had a problem standing up and looked "impaired." He was slurring his words, but he didn't smell of alcohol. While Mr. Cox was calling 911 to report the accident and tell the dispatcher that appellant "needed help," he looked up to see appellant driving off. The 911 operator asked Mr. Cox if he could follow appellant until the

police could find them both.

It took a few minutes for Mr. Cox to get back into his car and follow appellant, who had driven off the freeway at the next exit ramp and run into a light post on the service road. Appellant's engine was still running and the wheels were still spinning, but his SUV was "impaled" on the pole which was pushed over at a 45 degree angle. Mr. Cox once again parked his car and walked up to appellant's car. Appellant was "not really alert." He didn't seem to know that the OnStar person was trying to talk to him.

When a police officer arrived, appellant came up and shook the officer's hand and then fell over into the officer's arms. His speech was very slurred, he had a hard time keeping his eyes open, and he acted "sluggish." After MedStar personnel checked appellant at the scene to make sure that he had no serious injuries, the officer transported him to the hospital where appellant agreed to a blood test. The results of that test showed that appellant tested positive (at therapeutic levels)[2] for both tramadol (Ultram), a painkiller, and zolpidem (Ambien), a sleeping pill. An emergency-room nurse testified that Ambien induces sleep within 15 to 30 minutes[3] and that Ultram is an opiate painkiller that could cause drowsiness

---

[2] A doctor testified that a therapeutic level is one at which the drug would be taken as commonly prescribed.

[3] She explained that Ambien also causes amnesia and sleepwalking. She had heard of people who had driven away from home "not remembering anything" after taking Ambien. A doctor testified that she knew of several examples of people taking Ambien and then having severe cases of amnesia. She also remembered a case just like appellant's:

> The one case I can remember is that there was a woman who had taken some Ambien and she had driven off the road and into somebody's–the side of somebody's house. She couldn't quite figure out why she had gotten there or how she had gotten there afterwards.

as well as give pain relief.  When shown both the Ambien and Ultram pills, the nurse agreed that they are the same shape and same white color; the only difference is that one is slightly larger than the other.

Appellant testified that he is thirty-four years old, married, with one ten-year-old daughter.   More than ten years earlier, appellant had been injured at an auto auction by a Jeep that had gotten loose and, while traveling at about 35-45 m.p.h., run into nineteen people, including appellant.  He had to have back surgery and still suffers from chronic back pain.  He has taken a wide variety of prescription medicine to try to relieve the pain.  On April 15th, appellant went to an urgent care clinic and was prescribed Ambien, Soma, Celebrex, and Ultram for his pain and to help him sleep.  Appellant had never had Ambien before, but he had been taking Ultram for over seven years.

On Saturday morning, April 19th, appellant was driving from his home in Aledo to his job as a sales manager at a Carrollton car dealership.  Saturday is his busiest day.  He remembered getting up and stopping at a gas station near his home, but that is all that he remembered of that day.  He did not remember the two accidents,[4] talking with Mr. Cox or police officers, or being taken to the hospital.  The first thing he remembered was waking up in jail.  He did not remember taking his medicines Saturday morning, but "obviously" he did; he is "a creature of habit" and knew that he could not make the hour-long drive to work without his Ultram and Soma pills.  His wife always puts his pills out for him.  Appellant said

---

[4] Appellant testified that the first he knew of the accidents was when he was getting his car out of the impound lot two days later and they told him that his car was damaged.

that he did not intentionally take an Ambien pill that morning; he had never taken Ambien before April 15th and would not take one unless he was going to bed immediately afterward.

Appellant's wife testified that she did remember putting out appellant's Ambien and Ultram pills the night before. She felt responsible because the Ambien and Ultram look so much alike and she did not separate the Ambien (to be taken later that night) far enough from the Ultram on the microwave. She saw that the Ambien pill was still on the microwave the next morning, but she didn't think to take it away.

At the charge conference, appellant asked for three different jury instructions, one of which was on involuntary intoxication.[5] The State argued that appellant was not entitled to such an instruction because appellant admitted that he took the pill and it was an Ambien pill;

---

[5] That instruction read as follows:

You are instructed that involuntary intoxication is an affirmative defense to prosecution. A person is involuntarily intoxicated when:
1.      the accused has exercised no independent judgment or volition in taking the intoxicant; and
2.      as a result of his intoxication, he did not know that his conduct was wrong or was incapable of conforming his conduct to the requirements of the law he allegedly violated.
In order to satisfy #1, you are hereby instructed the accused:
1.      was unaware he had ingested an intoxicating substance;
2.      ingested an intoxicant by force or duress; or
3.      took a prescribed medication according to the prescription.

Therefore, if you believe from the evidence beyond a reasonable doubt that on the occasion in question the defendant, DEFENDANT, did drive while intoxicated, as alleged in the information, but you further believe from the evidence, or you have a reasonable doubt thereof, that the driving was the result of an involuntary intoxication of the defendant, then you will acquit the defendant and say by your verdict "Not Guilty."

therefore he "voluntarily took the intoxicant. . . . The fact is he took the pill.  He has a responsibility to know what he's actually ingesting in his system."  The trial judge denied all three of appellant's requested instructions, including that of "involuntary intoxication," noting that it appeared to be a comment on the evidence when it told the jury "that in order to satisfy number one, you're hereby instructed that these things are true."[6]

The State focused its argument on how the law does not require a DWI defendant to know that he has taken an intoxicating substance.  "And why did the law makers choose to keep the law the same for whatever circumstance?  Because the result is the same.  The result is just as dangerous whether somebody knew or didn't know what the consequences might be of taking a certain drug."

The defense argued that sometimes the law just doesn't make sense: "Sometimes when the legislature makes all of this law and the courts interpret the laws, sometimes common sense is thrown out the window. . . . Do you think for a second that he took that [Ambien] intentionally?"

The jury sent out a note asking, "What does the term 'introduction' mean?" The trial judge told the jury that the term did not have any special meaning, and, shortly thereafter, the

---

[6] The trial judge was correct that the instruction, as submitted (see note 5), did assume the truth of numbers 1, 2, and 3.  But that error was easy to fix.  The sentence should have read:

> In order to satisfy #1, you are hereby instructed that the accused **must prove, by a preponderance of the evidence, that he**
> 1.    was unaware he had ingested an intoxicating substance;
> 2.    ingested an intoxicant by force or duress; or
> 3.    took a prescribed medication according to the prescription.

jury returned a guilty verdict.

On appeal, appellant argued that the trial judge erred in failing to give the jury his requested instruction #2 on a voluntary act or his requested instruction #3 on "involuntary intoxication by prescription medicine." As the court of appeals repeatedly noted, appellant did not complain about the trial court's failure to give the jury his requested instruction #1, on the affirmative defense of involuntary intoxication.[7] In its memorandum opinion on remand, the court of appeals held that appellant "was entitled to an instruction about the voluntariness of his actions and that failure to include an instruction constituted some harm" so it sustained appellant's sole point of error.[8]

## II.

### A.    The Affirmative Defense of Involuntary Intoxication

Voluntary intoxication is virtually never a defense to crime. The law has proved unwilling to permit a condition that people, at least historically, consider a crime, a sin, or at best a personal weakness, to serve as an excuse for criminal conduct.[9] Indeed, permitting

---

[7] *Farmer*, No. 02-09-00278-CR, 2012 WL 4937104, at *3 n.4 & *5 n.6 (Tex. App.–Fort Worth 2012).

[8] *Id.*

[9] *See City of Minneapolis v. Altimus*, 238 N.W.2d 851, 855 (Minn. 1976) (voluntary intoxication never a defense at common law); *Colbath v. State*, 4 Tex. Ct. App. 76, 78-79 (1878) (voluntary intoxication neither excuses nor justifies criminal conduct; intoxication was defendant's "own act and folly" and "his own gross vice and misconduct").

a defense of voluntary intoxication would only increase its prevalence.[10] "Drunkenness will

be presumed to be voluntary unless some special circumstance is established to remove it

from that category."[11]

Involuntary intoxication has always been the one recognized exception to this general

rule. The early common-law doctrine of "involuntary intoxication"[12] relieved a person of

criminal responsibility if, because of involuntary intoxication, he was temporarily rendered

legally insane at the time he committed the offense.[13] Involuntary intoxication is sometimes

described as "innocent intoxication" because the defendant is without moral fault or

blameworthiness for his condition.[14] The law does not criminalize conduct that is entirely

---

[10] *Carter v. State*, 12 Tex. 500, 506 (1854) ("There would be no security for life or property if men could commit crimes with impunity, provided they would first make themselves drunk enough to cease to be reasonable beings.").

[11] ROLLIN M. PERKINS & RONALD N. BOYCE, CRIMINAL LAW 1001 (3rd edition 1982).

[12] *City of Minneapolis v. Altimus*, 238 N.W.2d 851, 855-56 (Minn. 1976) (quoting 1 HALE, HISTORY OF THE PLEAS OF THE CROWN 32 (1778) and concluding that "[t]he defense of involuntary intoxication has long been recognized by the courts in England and the United States); *see generally,* Singh, *History of the Defense of Drunkenness in English Criminal Law*, 49 LQ Rev 528, 533 (1933) (cited in Phillip E. Hassman, *When Intoxication Deemed Involuntary So As To Constitute a Defense to Criminal Charge*, 73 A.L.R.3d 195 (1976 & 2013 Supp.)).

[13] *See* PERKINS & BOYCE, *supra* note 11 at 1001; 1 WAYNE R. LaFAVE AND AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW 558-59 (1986).

[14] PERKINS & BOYCE, *supra* note 11 at 1001; *see State v. Brown*, 16 P. 259, 259-60 (Kan. 1888) (acknowledging "innocent" intoxication defense to public intoxication and DWI offenses). As the Kansas Supreme Court explained in *Brown*:
> But are idiots, insane persons, children under seven years of age, babes, and persons who have been made drunk by force or fraud, and carried into a public place, to be punished under the statute? And if not, why not? And, if these are not to be punished, then no sufficient reason can be given for punishing those who have become drunk through unavoidable accident, or through an honest mistake.

innocent and could not be prevented or deterred.[15]

Texas courts recognize that involuntary intoxication is an affirmative defense when:

- "the accused has exercised no independent judgment or volition in taking the intoxicant; and

- as a result of his intoxication he did not know that his conduct was wrong[.]"[16]

This Court long ago defined the test for involuntariness as the "absence of an exercise

---

*Id.* at 260.  The court noted that the legislature *could* hold babes, "idiots," the insane, and the involuntarily intoxicated criminally liable, "[b]ut we should never suppose that the legislature intended to punish the innocent, unless particular words are used that will bear no other construction."  *Id.*  The court then quoted Bishop's treatise on the criminal law to the same effect:

> "To punish a man who has acted from a pure mind, in accordance with the best lights he possessed, because, misled while he was cautious, he honestly supposed the facts to be the reverse of what they were, would restrain neither him nor any other man from doing a wrong in the future; it could inflict on him a grievous injustice, would shock the moral sense of the community, would harden men's hearts, and promote vice instead of virtue."

*Id.* at 261 (quoting 1 BISHOP, CRIMINAL LAW § 301).

[15] *See id.*

[16] *Mendenhall v. State*, 15 S.W.3d 560, 565 (Tex. App.– Waco 2000), *aff'd*. 77 S.W.3d 815 (Tex. Crim. App. 2002) (citing *Torres v. State*, 585 S.W.2d 746, 749 (Tex. Crim. App. [Panel Op.] 1979) which had cited *City of Minneapolis v. Altimus,* 238 N.W.2d 851, 856-57 (Minn. 1976)); *see also Aliff v. State,* 955 S.W.2d 891, 893 (Tex. App.—El Paso 1997, no pet.); *Juhasz v. State,* 827 S.W.2d 397, 406 (Tex. App.—Corpus Christi 1992, pet. ref'd).  The court of appeals in *Mendenhall* stated that the second part of the test was that the defendant "did not know that his conduct was wrong or was incapable of conforming his conduct to the requirements of the law he allegedly violated." 77 S.W.3d at 817.  On discretionary review, we held that when the insanity statute, section 8.01 of the Penal Code, was amended in 1983, it eliminated the "incapable of conforming his conduct" aspect of the insanity law.  Thus, to establish an insanity defense or the related defense of "involuntary intoxication," a defendant must prove that he "did not know that his conduct was wrong." *Id*.  *See generally* Lewis Buttles, *Criminal Law–Defenses—Involuntary Intoxication is a Defense in Texas*, 12 ST. MARY'S L.J. 232 (1980).

of independent judgment and volition on the part of the accused in taking the intoxicant."[17]

This Court has never explained precisely what it meant by that definition, but American courts have generally held that a person is involuntarily intoxicated when he has become intoxicated through one of four ways: (1) the fault of another, (2) by his own accident, inadvertence, or mistake, (3) pathological intoxication based on a physiological or psychological condition beyond his control, or (4) unexpected intoxication caused by a medically prescribed drug.[18]

The first mode, intoxication caused by the fault of another, was the earliest common-law "involuntary intoxication" defense.[19] Today, courts uniformly recognize that intoxication caused by another's force, duress, or fraud, without any fault on the part of the accused, is involuntary.[20] Texas courts recognize this fraud or coercion prong of involuntary

---

[17] *Hanks v. State*, 542 S.W.2d 413, 416 (Tex. Crim. App. 1976). In *Hanks*, this Court held that the defendant could not establish involuntary intoxication when he suspected that his companion had put a drug in his drink, questioned her about putting something in it, but drank it anyway. *Id.*

[18] *Altimus*, 238 N.W.2d at 856.

[19] *See Pearson's Case*, 168 Eng. Rep. 1108, 1108 (1835) (intoxication was involuntary if "by stratagem, or the fraud of another").

[20] *See e.g., Burrows v. State*, 297 P. 1029, 1035 (Ariz. 1931) (approving trial judge's instruction that stated that involuntary intoxication would be a complete defense if defendant was compelled to drink against his will and "his reason was destroyed" so "that he did not understand and appreciate the consequences of his act"); *People v. Penman*, 110 N.E. 894, 900 (Ill. 1915) (reversible error to refuse jury instruction on "involuntary intoxication" when defendant testified that he took tablets that a man told him were breath perfumers when he gave them to the defendant but that were, in fact, cocaine tablets); *People v. Scott*, 146 Cal.App.3d 823, 825-31 (Cal. Ct. App. 1983) (defendant was improperly convicted of attempted unlawful taking of a vehicle when evidence showed that someone had "spiked" punch with hallucinogenic substance at a family reunion and his bizarre delusions and actions were caused by involuntary intoxication); *Commonwealth v. McAlister*,

intoxication.[21]  For example, in *Torres v. State*, some evidence indicated that the male robber had given his female cohort a drink containing water, Alka-Seltzer, and some Thorazine tablets.  The female robber appeared drugged at the time she assisted her male companion in robbing the homeowner victim.[22]  We reversed the female's conviction because the trial judge refused to give an instruction on involuntary intoxication as an affirmative defense.[23]

Under the second prong, intoxication is involuntary if the defendant voluntarily took the substance but was unaware of its intoxicating nature.[24]  Typically this prong requires that the defendant's mistake reaches some threshold of reasonableness before the defense may

---

313 N.E.2d 113, 119 (Mass. 1974) (trial judge did not err in giving instruction of involuntary intoxication when defense evidence suggested defendant's coffee was spiked with drug that produced a reaction consistent with LSD); *compare United States v. Bindley*, 157 F.3d 1235, 1241-42 (10th Cir. 1998) (defendant not entitled to "involuntary intoxication" instruction when he knowingly smoked marijuana cigarette that he claimed must have been laced with another, more powerful, drug because he voluntarily smoked marijuana and should have known that marijuana cigarettes often come with other substances added).

[21] *Torres v. State*, 585 S.W.2d 746, 749 (Tex. Crim. App. [Panel Op.] 1979); *see also* Buttles, *supra* note 1, at 236 ("Taking an intoxicant due to the fraud or deception of another person has invariably been considered involuntary").

[22] *Torres*, 585 S.W.2d at 748.

[23] *Id.*

[24] *See Solomon v. State*, 227 P.3d 461, 467 (Alaska Ct. App. 2010) (recognizing a defense of "unwitting" involuntary intoxication, available only to defendants who make a reasonable, non-negligent mistake concerning the intoxicating nature of the beverage or substance ingested); *see generally* PERKINS & BOYCE, *supra*, note 11 at 1002 (noting that what prevents the intoxication from being voluntary in the fraud cases "is not the trickery of the other person but the innocent mistake of fact by the one made drunk, and an actual ignorance of the intoxicating character of the liquor or drug has the same effect whether the mistake is induced by the artifice of another or not.").

be asserted at trial.[25]  Texas courts have recognized this "unwitting" prong of involuntary intoxication.[26]

Under the third prong, "pathological intoxication" may occur when a defendant unknowingly suffers from a physiological or psychological condition that renders him abnormally susceptible to a legal intoxicant.  For example, a person who takes a first sip of whiskey and has a severe allergic reaction to the alcohol that includes amnesia or other mental derangement would qualify.[27]  No Texas courts have acknowledged this form of an involuntary-intoxication defense, and most other state courts are reticent to do so.[28]

---

[25] *See id.; Altimus*, 238 N.W.2d at 856 ("innocent mistake"); *see generally*, MODEL PENAL CODE § 2.08(5)(b) (voluntary or "self-induced intoxication" means "intoxication caused by substances that the actor knowingly introduces into his body, the tendency of which to cause intoxication he knows or ought to know, unless he introduces them pursuant to medical advice or under such circumstances as would afford a defense to a charge of crime[.]").  Thus, "involuntary" intoxication may occur when the actor knowingly introduces a substance into his body "the tendency of which he *does not* know nor reasonably should know."

[26] *See Torres*, 585 S.W.2d at 748.  Although there was evidence in *Torres* that the co-defendant had "spiked" the female defendant's drink, this Court did not rely on the "force, fraud, or coercion" prong of involuntary intoxication.  Instead we relied solely on the fact that the defendant had no knowledge of the intoxicating nature of the substance that she voluntarily drank and thus she exercised no independent judgment in taking the intoxicant.  *Id.  See also Mendenhall*, 15 S.W.3d at 565 (to satisfy first element of involuntary intoxication defense, defendant must prove he was unaware of ingesting intoxicant, ingested intoxicant by force or duress, or took a prescribed medication according to prescription).

[27] *See* MODEL PENAL CODE § 2.08(4), (5)(c) (defining pathological intoxication as "intoxication grossly excessive in degree, given the amount of the intoxicant, to which the actor does not know he is susceptible.").

[28] *See, e.g. Kane v. United States*, 399 F.2d 730, 736-37 (9th Cir. 1968) (pathological intoxication not recognized); *Martinez v. People*, 235 P.2d 810, 815 (Colo. 1951) (allowing defense only if pled as insanity); *Thomas v. State*, 125 S.E.2d 679, 682 (Ga. Ct. App. 1962) (decreased tolerance to alcohol does not decrease responsibility for criminal acts); *but see Altimus*, 238 N.W.2d at 858 (unusual and unexpected reaction to drugs can be a defense).

Fourth and finally, courts have found the defense of involuntary intoxication applicable when, at the time of the offense, a defendant was voluntarily taking prescription medicine without any awareness that it might have an intoxicating effect.[29]  Texas courts have addressed this fourth prong and stated that "[i]ntoxication by prescription medication occurs only 'if the individual had no knowledge of possible intoxicating side effects of the drug, since independent judgment is exercised in taking the drug as medicine, not as an intoxicant.'"[30]

The treatises and cases uniformly hold that proof of involuntary intoxication is not, by itself, sufficient to raise the affirmative defense.  The defendant must also offer evidence

---

[29] *See People v. Hari*, 843 N.E.2d 349, 359-360 (Ill. 2006) ("We find that the drugged condition alleged here—an unexpected adverse side effect of a prescription drug that was unwarned by the prescribing doctor, the [Physician's Desk Reference] or the package insert—is 'involuntarily produced' within the plain meaning of the involuntary intoxication affirmative defense statute.); *Commonwealth v. Darch*, 767 N.E.2d 1096, 1099-1100 (Mass. Ct. App. 2002) (testimony that defendant may have been misprescribed medicine that led to her psychic and suicidal condition raised the issue of involuntary intoxication); *People v. Caulley*, 494 N.W.2d 853, 858 (Mich. Ct. App. 1992); *see also* 1 LAFAVE & SCOTT, *supra* note 13, § 4.10(f), at 560 ("Yet another instance of involuntary intoxication is when the substance was taken pursuant to medical advice."). Some courts apply this defense even when the defendant is aware of the potential side effects if the medication was taken in the prescribed dosage.  *See State v. Gardner,* 601 N.W.2d 670, 675 (Wis. Ct. App. 1999) (declining to limit "involuntary intoxication" defense to only those occasions in which the defendant had no knowledge of the intoxicating effect of the medication; "[e]ven if forewarned of the intoxicating effect of a prescription drug, a person should have recourse to the defense if the drug renders him or her unable to distinguish between right and wrong. When faced with a medical condition requiring drug treatment, the patient hardly has a choice but to follow the doctor's orders. Intoxication resulting from such compliance with a physician's advice should not be deemed voluntary just because the patient is aware of potential adverse side effects."); *Brancaccio v. State*, 698 So.2d 597, 598-600  (Fla. Dist. Ct. App. 1997).

[30] *Mendenhall v. State,* 15 S.W.3d 560, 565 (Tex. App.– Waco 2000), *aff'd*, 77 S.W.3d 815 (Tex. Crim. App. 2002).

that the intoxication has so affected the capacity of his mind and so deranged his rational thinking at the moment that he is unable "to know what he is doing and that it is wrong."[31]

## B.    The "Involuntary Intoxication" Defense Applies to DWI.

The involuntary intoxication defense may be applicable in a driving while intoxicated prosecution.  For example, in *Commonwealth v. Wallace*,[32] the evidence showed that the defendant took a Librium pill as prescribed and crashed his car.  He was charged with DWI.[33]  At trial, the judge prevented the defendant from offering evidence that he had no knowledge of the effects of Librium and that he had not received warnings about using it before driving.[34]  The Massachusetts appeals court held that the law should recognize a defense of unwitting intoxication, so that "perfectly innocent and well-intentioned[,] careful persons" would not be subjected to criminal penalties "under circumstances which . . . would not subject [them] to a liability for damages in a civil proceeding."[35]  After all, a person cannot

---

[31] PERKINS & BOYCE, *supra* note 11 at 1005 (citing *State v, Alie*, 96 S.E. 1011, 1014 (W. Va. 1918) ("Since involuntary intoxication acts to excuse the criminality of the act, it must rise to the level of insanity, which in this jurisdiction is determined by the *M'Naghten* test."); *People v. Cruz*, 83 Cal.App.3d 308, 330 (1978) ("Unconsciousness due to involuntary intoxication is recognized as a complete defense to a criminal charge.")); *see Mendenhall*, 77 S.W.3d at 818 (under the insanity statute, section 8.01, "[i]t is now an affirmative defense to prosecution that, at the time of the alleged offense, the defendant, as a result of a severe mental defect caused by involuntary intoxication, did not know that his conduct was wrong.").

[32] 439 N.E.2d 848 (Mass. Ct. App. 1982).

[33] *Id.* at 849.

[34] *Id.*

[35] *Id.* at 851.

be civilly liable for causing a car accident if he did not act negligently. Therefore, the trial judge erred in preventing the defendant from introducing evidence that he had no advance knowledge or warning that the medicine was an intoxicant.[36] But the Massachusetts court added an important caveat:

> We do not imply that a jury could not in some instances find that a defendant had information sufficient to place on him a duty of inquiring of his doctor as to the possible effects of a prescription drug. In such circumstances, a conviction [for DWI] would be proper if it is found that the defendant was negligent in not asking, and hence not knowing, of such possible effects on his driving.[37]

In other words, the Massachusetts court restricted the defense of unwitting involuntary intoxication to those defendants who acted reasonably—non-negligently—concerning the intoxicating nature of the substance they ingested.

Other courts have also held that involuntary intoxication is a defense to DWI.[38] Indeed, one of the seminal cases discussed by professors Perkins and Boyce is a 1937 New

---

[36] *Id.* at 852-53.

[37] *Id.* at 853 n.15.

[38] *See Solomon v. State*, 227 P.3d 461, 467 (Alaska Ct. App. 2010) (recognizing defense to DWI of unwitting intoxication but making it available "only to defendants who make a reasonable, non-negligent mistake concerning the intoxicating nature of the beverage or substance that they ingested."); *Commonwealth v. Smith*, 831 A.2d 636, 639-41 (Pa. Super. App. 2003) (recognizing "involuntary intoxication" defense to DWI but rejecting its application in case in which defendant took prescribed medication and then voluntarily drank a "moderate" amount of alcohol without regard to the effects of the combination of alcohol and medication); *People v. Chaffey*, 25 Cal.App.4th 852, 853-54 (Cal. Ct. App. 1994) (recognizing defense of unwitting intoxication to DWI but holding that jury could reasonably reject that defense when evidence showed defendant took an overdose of Xanax in an attempt to commit suicide and then, in an unconscious state, began driving her car).

York case holding that the DWI defendant was entitled to an acquittal when the undisputed evidence showed that he had "inadvertently" overdosed on his doctor-prescribed medicine.[39] However, an important limitation on the "involuntary intoxication" defense in DWI cases is that if the defendant, despite his intoxication, was or became aware that he was driving while intoxicated, he cannot claim the defense if he continues to drive. As Professors Perkins and Boyce explain, if the defendant

> was still sufficiently in possession of his faculties to know what he was doing, and to understand the character of his acts, and with such knowledge and understanding should voluntarily go into a public place or drive a motor vehicle on a public highway, the involuntariness of the intoxication would not excuse him because the prohibited act itself was done voluntarily.[40]

We have never discussed the applicability of the affirmative defense of involuntary intoxication to DWI prosecutions, although numerous Texas courts of appeals decisions have held that this defense does not apply to DWI cases.[41] Most of those decisions are unpublished, but they all rely on *Aliff v. State*.[42] In that DWI case, the El Paso Court of Appeals held that the defendant failed to offer any evidence that he took his prescription

---

[39] PERKINS & BOYCE, *supra* note 11 at 999 (discussing *People v. Koch*, 294 N.Y.S. 987 (N.Y. App. Div. 1937)).

[40] *Id*. at 999 (citing *dictum* in *State v. Brown*, 16 P. 259, 262 (Kan. 1888), which had held that involuntary intoxication is a defense to public drunkenness).

[41] See, e.g., *Brown v. State*, 290 S.W.3d 247, 250 (Tex. App.–Fort Worth 2009, pet. ref'd); *Otto v. State*, 141 S.W.3d 238, 241 (Tex. App.–San Antonio 2004) (because DWI requires no culpable mental state "defense of involuntary intoxication is not relevant"), *rev'd on other grounds*, 273 S.W.3d 165 (Tex. Crim. App. 2008).

[42] 955 S.W.2d 891, 893 (Tex. App.–El Paso 1997, no pet.).

medicines for mental illness and back problems without knowledge of their intoxicating effect.[43]  Therefore, he was not entitled to any instruction on involuntary intoxication.[44]  The court then cited to *Torres* for the proposition that "involuntary intoxication is a defense to criminal culpability."[45]  From that sentence, the El Paso court reasoned that, because proof of a culpable mental state is not required in prosecutions for intoxication offenses, including driving while intoxicated, the defense did not apply to DWI.[46]  But, in *Torres*, we said that involuntary intoxication is a defense to "criminal culpability" in the sense of "criminal responsibility," not a culpable mental state.[47]  Involuntary intoxication is a "confession and avoidance" defense and excuses criminal conduct just as insanity, duress, and entrapment excuse criminal conduct.[48]  There is nothing in the common law, our law, or the laws of

---

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Torres v. State*, 585 S.W.2d 746, 749 (Tex. Crim. App. [Panel Op.] 1979) (stating that voluntary intoxication is no defense to "criminal responsibility" and no defense to "the commission of crime," but involuntary intoxication that rises to the level of insanity under section 8.01 "relieves a person of criminal culpability" and provides the proper "level of mental dysfunction necessary to relieve a defendant from the criminal consequences of his acts.").

[48] *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007) (defenses that are subject to the doctrine of confession and avoidance do not negate any element of the offense; they excuse what would otherwise amount to criminal conduct); *see, e.g., Graham v. State*, 566 S.W.2d 941, 948 (Tex. Crim. App. 1978) ("The purpose of the insanity defense issue is to determine whether the accused should be held responsible for the crime, or whether his mental condition will excuse holding him responsible."); *Rodriguez v. State*, 368 S.W.3d 821, 824 (Tex. App.–Houston [14th Dist.] 2012, no pet.) (affirmative defense of duress "'by definition, does not negate any element of the offense, including culpable intent; it only excuses what would otherwise constitute criminal conduct.'");

other states that suggest that the affirmative defense of involuntary intoxication does not or should not apply to DWI prosecutions. To punish a person who has acted innocently, without negligence, and while taking all reasonable precautions "would restrain neither him nor any other man from doing a wrong in the future; it could inflict on him a grievous injustice, would shock the moral sense of the community, would harden men's hearts, and promote vice instead of virtue."[49] It also promotes disrespect for the law.

For these reasons, I conclude that Texas does permit the affirmative defense of "involuntary intoxication" in DWI cases. Because appellant offered some evidence of both prongs of the "involuntary intoxication" defense and his first requested jury instruction raised that issue, even if it was not entirely correct, I think that the trial judge erred in refusing any jury instruction on involuntary intoxication. But, because appellant did not raise any issue concerning that particular jury instruction on appeal, he has forfeited that claim now. I therefore agree with the majority's disposition of this case because appellant was not entitled to a jury instruction on a voluntary act under Section 6.01(a) of the Penal Code.

Filed: October 9, 2013
Publish

---

*Zamora v. State,* 508 S.W.2d 819, 822 (Tex. Crim. App. 1974) (the defense of entrapment necessarily assumes the act charged was committed; defendant's denial of knowledge that marijuana was in his car was a denial of the offense and did not entitle him to defense of entrapment).

[49] 1 JOEL PRENTISS BISHOP, COMMENTARIES ON THE LAW OF CRIMINAL PROCEDURE § 301 (2d ed. 1872).