

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00508-CR

———————————————

ERIC RICHARDSON, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court No. 1536852D

Before Gabriel, Kerr, and Birdwell, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

Appellant Eric Richardson appeals from his conviction for driving while intoxicated. In two points, he challenges a fee assessed against him as a court cost and the trial court's denial of his requested jury question on involuntary intoxication. We affirm the judgment as modified.

## I.    Background

Appellant has a history of suffering seizures. On March 10th, 2018, he was admitted to Medical City Arlington (MCA) after suffering several seizure episodes. At the hospital, he was administered anti-seizure medication. After each seizure, appellant became temporarily confused. Appellant's wife testified that when he has a seizure, "he wakes up dazed and confused, very sweaty, glassy eyed. He doesn't remember anything." While he was at MCA, "[t]here were points that he didn't remember why he was in the hospital" and "was in and out of understanding why he was there." The doctor who treated appellant in MCA's emergency room explained that, after the type of seizures appellant experienced, patients "usually have something called postictal confusion. It is a confusion status. It is a very debilitating status. . . . They're just very, very confused. This lasts for a few minutes to up to two days." The doctor stated that appellant had a seizure in the emergency room and as a result was in postictal status for about fifteen minutes but then returned to his normal baseline status.

MCA doctors originally planned to discharge appellant on March 11, but because of concerns about medication side effects—appellant became lightheaded when standing—the treating neurologist recommended that he stay another day. Around 9:00 p.m. on March 11, appellant's wife took a shower, planning to sleep on a sofa in appellant's hospital room. When she went into the room after her shower, appellant was no longer there.

After midnight, Sharilys Velez and her family woke to the sound of appellant banging on the front door of their house in Arlington and demanding to be let in. The family did not know appellant or why he was trying to enter their home. Velez called 9-1-1.

When police responded, they found appellant in his car slowly reversing his car from where he had parked it on the street in front of Velez's house. They stopped appellant and discovered that he had a gash on the top of his head and that he had an IV in his arm. An ambulance was called, and once it arrived, officers spoke with appellant. He admitted that he had been drinking. Officers found open containers of beer in his car—two 25-ounce cans of Bud Ice beer, one empty and one partially empty—as well as a receipt for the beer's purchase at around 10:30 p.m. earlier that evening. Based on their investigation and appellant's performance on the horizontal gaze nystagmus test, the officers decided to arrest appellant for driving while intoxicated.

The ambulance took appellant back to MCA. There, he declined to give the officers permission for a blood draw, so the officers applied for and received a blood draw warrant. Subsequent analysis of his blood showed a blood alcohol concentration of 0.178 (plus or minus .017).

At trial, the MCA emergency room doctor who had treated appellant testified that Keppra, the medication administered to appellant for his seizures, can cause drowsiness or sleepiness, as well as loss of coordination, as a side effect. He further stated that taking Keppra with alcohol can increase the side effect of Keppra, and Keppra can increase alcohol's effect. However, he further testified that Keppra is not an intoxicant.

Appellant's attorney requested a jury question on involuntary intoxication based on "the seizures, the Keppra, and the [hospital] treatment":

> [Appellant's attorney]: Judge, and one more thing. I just—I might request an involuntary intoxication instruction.
>
> . . . .
>
> THE COURT: You mean—well, just tell me what you—in general, what you want it to say.
>
> [Appellant's attorney]: Well, I mean, basically it would follow the language—the voluntariness language in the code that, you know—I think I addressed it in voir dire, and if they believe that, you know—that this offense was not committed voluntarily, you know, then—to that effect.
>
> THE COURT: Well, okay. But you're gonna have to—what contributed or what evidence in the record is there that he was intoxicated involuntarily?

[Appellant's attorney]: I think everything in conjunction with regards to **the seizures, the Keppra, and the treatment** at the hospital just prior to—and we're talking hours prior to an encounter with law enforcement at a house.

THE COURT: Well, I would agree if—if your expert had said you can become intoxicated or his actions were the result of involuntary intoxication because of the medication, because the hospital administered the medication and that was probab—arguably involuntary, although, I guess he had to consent to that. **But there's nothing in the record that says that it—it was solely the result of the Keppra**. And if you're gonna say, Well, it's a combination, then—then the purchase of the Bud Ice and drinking the Bud Ice, **there's nothing to say that that was involuntary**. There's nothing in the record that speaks to that.

[Appellant's attorney]: Yes, Judge.

THE COURT: I just—I'll think about it. If you want to have a proposed charge that you want to put in the record, that's—I'll think about it, but

I—

[Prosecutor]: Judge, that's like saying that someone else gave him all the alco—I mean, someone else dosed him and he didn't give it to himself.

THE COURT: Well, you're not gonna get it—

[Prosecutor]: There's no evidence of that.

THE COURT: You're just—you're not gonna get it based upon the totality and the—and the combination of—of drugs and alcohol because the alcohol was a voluntary act. There's nothing to say that the consuming of alcohol was involuntary.

[Appellant's attorney]: And—

THE COURT: So then—so then you're left with, Okay, well, was it just the Keppra? And because he's having seizures, that's not intoxication. So then you have—then you have to rely on the Keppra

5

and there's just nothing in the—in the—in the record to say that it was just the Keppra and that was involuntary.

[Prosecutor]: And **Keppra is not an intoxicating substance**. I mean, there was testimony about that.

[Appellant's attorney]: **I'm not claiming that it is**.

THE COURT: Hence my point about nothing in the record stating that. So, you know, if Dr. What's-His-Name would have said that, then you might be there, but I just—I just can't—I just can't get there. I—**I just can't see that—that anything contributing to his intoxication, if any, would have been involuntary other than the administering of the medication which is combined with the alcohol was—had to have been—alcohol would have had to have been a voluntary act**, so I just—I just can't go there with you, Counsel. Novel theory, though.

[Prosecutor]: Can the State just put something on the record too real quick? The medical records—

THE COURT: If you must.

[Prosecutor]: The medical records make it clear that this defendant consented and anything that's given to him in the hospital is, therefore, voluntary. He's not being held there against his own free will and dosed with medicines that he has not consented to the administration of.

THE COURT: Yeah, I kind of said that. Thank you for adding to it though.

[Prosecutor]: You're welcome.

THE COURT: All right. Anything else?

[Appellant's attorney]: Nothing further, Judge.

[Emphasis added.]

At the trial conference, appellant's attorney read a proposed involuntary intoxication question into the record. The trial court denied the requested instruction. The jury found appellant guilty and assessed punishment at four years' confinement and a $1,000 fine. The trial court sentenced appellant accordingly.

## II.     Emergency Medical Services Fee

In appellant's first point, he challenges the "Emergency Medical Services" fee assessed against him as a court cost. He argues that article 102.0185(a) of the Texas Code of Criminal Procedure, the statutory provision on which the fee was based, is facially unconstitutional. *See* Tex. Code Crim Proc. Ann. art. 102.0185(a). Based on this court's opinion in *Casas v. State*, 524 S.W.3d 921, 927 (Tex. App.—Fort Worth 2017, no pet.), the State concedes the point. Accordingly, we modify the judgment to omit the challenged fee.[1]

## III.   Jury Charge

In appellant's second point, he argues that the trial court erred by denying his requested jury charge on involuntary intoxication.

Although appellant's attorney mentioned appellant's seizures in initially arguing for the instruction, from trial court's statements in response, the trial court clearly focused the discussion on whether there was any evidence that appellant's medication,

---

[1]The legislature amended this article after this court's *Casas* opinion, but the changes do not apply to a conviction for an offense committed before the effective date of the amendment. We make no comment on the effect of that amendment.

either alone or in combination with alcohol, was an intoxicant, and appellant's attorney did not argue that evidence of appellant's seizures could support submitting an involuntary intoxication question. Appellant's requested instruction further clarified the parameters of the request:

> Section 6.02(a) of the Texas Penal Code states a person commits an offense only if he voluntarily engages in conduct including an act an omission or possession[.]
>
> . . . .
>
> A defense asserted in this case is that the defendant was involuntary[ily] intoxicated to the point that he could not form the intent to voluntarily engage in criminal conduct under Section 6.02(a).
>
> **As a result of taking a substance as prescribed**, the defendant was so intoxicated that **he could not form the intent to voluntarily engage in conduct** at the time of the offense.
>
> In determining the issue of involuntary intoxication, you may consider the testimony of expert and nonexpert witnesses. The use of medications[,] . . . consumption of intoxicating liquor, drug, or other substance that merely arouses passion, diminishes perceptions, releases inhibition, or clouds reason and judgment does not excuse the commission of a crime; therefore, if you find that the defendant was involuntarily intoxicated to the extent of being incapable of forming the necessary voluntary[] intent to engage in the conduct, or if you have a reasonable doubt thereof, you should find the defendant not guilty. [Emphasis added.]

Appellant did not request an instruction that because of the effects of his seizures, he committed a nonvolitional act. He requested an instruction that because of the medication prescribed and administered to him to treat his condition, he did not have the normal use of his mental or physical faculties such that he could not

8

form the intent to voluntarily engage in conduct at the time of the offense. *See* Tex. Penal Code Ann. § 49.01(2) (defining "intoxicated"). While some testimony at trial indicated that his medication could make a patient drowsy or uncoordinated, no evidence supported a finding based on the instruction appellant requested. Instead, the only evidence at trial was that Keppra is *not* an intoxicant. Accordingly, regardless of whether involuntary intoxication is a defense to DWI offenses in Texas, *see Farmer v. State*, 411 S.W.3d 901, 908 (Tex. Crim. App. 2013) (Cochran, J., concurring) (stating that Texas law recognizes an affirmative defense of involuntary intoxication when the accused has no independent judgment or volition in taking the intoxicant and, as a result of his intoxication, did not know that his conduct was wrong), appellant was not entitled to his requested involuntary intoxication instruction. *See id.* at 906 (stating that a defendant is entitled to a jury instruction on a defensive issue raised by the evidence).

## IV.   Conclusion

We modify the trial court's judgment to omit the Emergency Medical Services fee, and we affirm the judgment as modified.

                                        /s/ Wade Birdwell
                                        Wade Birdwell
                                        Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  August 28, 2019