**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-21-00106-CR**
_____

**BRIAN ROLLINS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 252nd District Court
Jefferson County, Texas
Trial Cause No. 19-31017

**MEMORANDUM OPINION**

A jury convicted Brian Rollins of murder. In two issues on appeal, Rollins contends we should reverse his conviction because (1) the evidence didn't allow reasonable jurors to reject his claim that he killed the victim under duress, and because (2) the jury didn't receive instructions on involuntary intoxication as a defense. *See* Tex. Penal Code Ann. § 19.02(b)(1). For the reasons discussed below, we affirm the trial court's judgment.

1

# BACKGROUND

In 2019, a grand jury indicted Rollins for murdering K.L.[1] The indictment alleges that Rollins, on December 29, 2018, intentionally and knowingly caused K.L.'s death by shooting her with a firearm. *See id.* After Rollins pleaded not guilty, his cases proceeded to trial. The jury heard testimony from sixteen witnesses, including two eyewitnesses, who testified they saw Rollins shoot K.L.

The testimony in the trial shows that Rollins and K.L. were neighbors and friends. The evening the incident occurred, Rollins was visiting K.L. at her house when K.L. asked Rollins to go to the store and buy some beer. Rollins told K.L. he would send a friend, and he walked back to his house. Less than twenty minutes later, Rollins returned to K.L.'s house, knocked on her door, and shot K.L. in the head with a pistol. The gunshot wound to K.L.'s head caused K.L.'s death. Rollins then ran to a nearby ditch, where he was arrested by police.

During trial, the defense conceded Rollins shot K.L., but alleged that he had done so under duress. At the State's request, the trial court admitted a video statement Rollins gave detectives almost eighteen months after the shooting. The defense pointed to the recording as evidence that Rollins shot K.L. under duress. In

---

[1]To protect the privacy of the victim, we refer to her by her initials, as the Texas Constitution grants crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process[.]" Tex. Const. art. I, § 30(a)(1).

his recorded statement, Rollins said three men held him and his children hostage in his house and had threatened to kill them unless he killed K.L. Rollins told detectives in the recording that a "man in black" was outside K.L.'s house waiting on him to kill K.L. Rollins also told detectives that when he walked across the street, the "man in black" pulled a gun on him, so he knocked on K.L.'s door and shot her. According to Rollins, after he shot K.L., the "man in black" chased him with a gun, so he ran until he fell in the ditch. Rollins added that he could not provide his statement to detectives immediately following the shooting because he was "confused." Rollins also told detectives that before the shooting, he ingested synthetic marijuana, which one of the men gave him, and the drug was "laced." As Rollins told it to the detective in the recording, the drug did not take effect until after the shooting.

The parties agreed Rollins's recorded statement warranted charging the jury on duress as an affirmative defense, but the prosecution disagreed with Rollins's attorney that an instruction on involuntary intoxication was warranted. The trial court denied Rollins's request to instruct the jury on his involuntary intoxication defense. But the trial court included an instruction on the affirmative defense of duress.

When the jury returned with its verdict, it rejected Rollins's duress defense and convicted him of murder. The jury assessed Rollins's punishment at fifty years in prison. *See id.* § 19.02(b)(1), (c).

3

ANALYSIS

In issue one, Rollins complains the evidence was insufficient to support his conviction of murder because he proved, by a preponderance of the evidence, the affirmative defense of duress. Rollins argues the evidence established that he was compelled to engage in the conduct by the threats of imminent death and serious bodily injury to himself and his family members, the compulsion was of the type that would render a reasonable person incapable of resisting the pressure, and he did not place himself in the position to be subjected to such compulsion. Rollins contends the evidence that he and K.L. were friends, he believed someone was threatening to kill him, and he remained faced down in a ditch by the scene, shows the jury's rejection of his duress defense is unjust and shocks the conscience.

We review the jury's decision to reject an affirmative defense for legal and factual sufficiency of the evidence. *Butcher v. State*, 454 S.W.3d 13, 20 (Tex. Crim. App. 2015). In reviewing the legal sufficiency of an affirmative defense, we review the record for a scintilla of evidence favorable to the factfinder's finding and disregard all evidence to the contrary unless a reasonable factfinder could not. *Id.* (citing *Matlock v. State*, 392 S.W.3d 662, 669–70 (Tex. Crim. App. 2013)). A factfinder's rejection of an affirmative defense should be overturned for lack of legal sufficiency only if the appellant establishes that the evidence conclusively proves the affirmative defense, and no reasonable factfinder was free to determine

4

otherwise. *Id.* (citing *Matlock*, 392 S.W.3d at 670). In reviewing the factual sufficiency of a finding rejecting an affirmative defense, we examine the evidence in a neutral light. *Matlock*, 392 S.W.3d at 671. "A finding rejecting a defendant's affirmative defense cannot be overruled unless, 'after setting out the relevant evidence supporting the verdict, the court clearly states why the verdict is so much against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased.'" *Butcher*, 454 S.W.3d at 20 (quoting *Matlock*, 392 S.W.3d at 671).

Duress is an affirmative defense to a prosecution and requires a defendant to prove by a preponderance of the evidence that he committed the offense "because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another." Tex. Penal Code Ann. § 8.05(a); *see Matlock*, 392 S.W.3d at 667 (citation omitted). Compulsion "exists only if the force or threat of force would render a person of reasonable firmness incapable of resisting the pressure." *Id.* § 8.05(c). Evidence that a defendant had a generalized fear of imminent harm is insufficient to raise the issue of imminent harm, which is required to warrant an affirmative finding on duress. *Brazelton v. State*, 947 S.W.2d 644, 648 (Tex. App.—Fort Worth 1997, no pet.).

Here, the evidence allowed the jury to reject Rollins's duress defense. First, the evidence allowed the jury to find intoxication, not duress, compelled Rollins to

5

shoot K.L. The evidence indicates Rollins and K.L. were friends who socialized multiple times "like normal" on the day of the shooting, and before the shooting, no one noticed anything unusual about Rollins's behavior. The evidence shows Rollins ingested synthetic marijuana before the shooting, and an eyewitness testified the person who shot K.L. was "tripping" like "he might have been on something." That testimony is consistent with an officer's testimony that Rollins appeared intoxicated at the scene, and Rollins admitted he was confused and unable to stand up after the shooting.

Second, the evidence allowed the jury to reject Rollins's claim that three men threatened to kill him and his children unless he killed K.L. Rollins claimed the men held him hostage for two hours as he held his children and begged the men to stop, but an officer who had responded to the call for assistance at the scene where the shooting occurred testified in the trial that the children appeared "fine" and "didn't seem to even know what was going on at the time." Additionally, the children testified that the day the incident occurred, they had "a good day" and didn't observe anything "weird" or "out of the ordinary" until police arrived.

Third, the evidence allowed the jury to reject Rollins's claim that a "man in black" forced him to kill K.L. In his video statement, Rollins said the "man in black" compelled him to shoot K.L. by threatening him at gunpoint outside K.L.'s house, and he also stated that the men who held him hostage were in the ditch threatening

6

to shoot him. However, no other witnesses corroborated Rollins's testimony. For example, an eyewitness to the shooting testified they didn't recall anyone near Rollins when Rollins walked to K.L.'s door and shot her. Nor did the eyewitness recall anyone running after Rollins as he ran to the ditch. Additionally, when a detective questioned Rollins about why the "man in black" did not shoot him, Rollins said the "man in black" was not there, contradicting his previous statement that the "man in black" chased him into the ditch.

While the jury might have chosen to believe that Rollins's acted under duress for the reasons he gave the police, as the factfinder it wasn't required to do so and by its verdict rejected his claim. Viewing the facts in the light most favorable to the verdict, we conclude the evidence is sufficient to support the jury's verdict rejecting Rollins's affirmative defense of duress. *See Butcher*, 454 S.W.3d at 20. Accordingly, we overrule issue one.

In issue two, Rollins complains the trial court erred by refusing to instruct the jury on involuntary intoxication. The State argues that Rollins did not raise an insanity defense, and despite that failure, Rollins failed to show that he was involuntarily intoxicated because he exercised judgment in taking the intoxicating substance.

We review the alleged jury charge error using a two-step process, first determining whether the charge was erroneous and, if so, whether the error caused

sufficient harm to require reversal. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015). Unless a defendant pleads guilty, the trial court in a criminal trial must provide the jury with a written charge distinctly setting forth the law appliable to the case[.]" Tex. Code Crim. Proc. Ann. art. 36.14. A trial court must instruct a jury on every defensive issue raised by the evidence whether the evidence "'is strong, feeble, unimpeached, or contradicted, and even when the trial court thinks the testimony is not worthy of belief.'" *Maciel v. State*, 631 S.W.3d 720, 722 (Tex. Crim. App. 2021) (quoting *Walters v. State*, 247 S.W.3d 204, 209 (Tex. Crim. App. 2007)).

Involuntary intoxication is an affirmative defense. Tex. Penal Code Ann. § 8.01(a) ("It is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong."); *Mendenhall v. State,* 77 S.W.3d 815, 817–18 (Tex. Crim. App. 2002) (stating it is an affirmative defense to prosecution that the defendant did not know his conduct was wrong at the time of offense because of severe mental defects caused by involuntary intoxication). A defendant is entitled to the instruction when the evidence shows the defendant exercised no independent judgment or volition in taking an intoxicant, and as a result of intoxication, the defendant didn't know his conduct was wrong or was incapable of conforming his conduct to the requirements of the law. *Mendenhall*, 77 S.W.3d at 817–18. Courts recognize intoxication can be involuntary when it arises because of, among other things, force,

8

duress, or fraud. *Farmer v. State*, 411 S.W.3d 901, 913 (Tex. Crim. App. 2013) (Cochran, J., concurring).

In requesting an involuntary intoxication instruction, Rollins relies on isolated statements in his video statement that he ingested synthetic marijuana given to him by one of the men holding him and his kids hostage, and that the synthetic marijuana ended up being "laced." Rollins argues those statements constitute evidence that he did not exercise independent judgment or volition in taking the synthetic marijuana, which resulted in him becoming intoxicated and killing K.L. Therefore, Rollins asserts he was entitled to an instruction on involuntary intoxication as an affirmative defense. We disagree.

To prevail on his involuntary intoxication defense, Rollins had to do more than offer evidence that he was intoxicated when he killed K.L. Tex. Penal Code Ann. § 8.04(d) (defining "intoxication" as the "disturbance of mental or physical capacity resulting from the introduction of any substance into the body"). Rather, Rollins had to offer evidence that the intoxication had so affected the capacity of his mind and so deranged his rational thinking at the moment he shot K.L. that he was unable "to know what he [was] doing and that it [was] wrong." *Farmer*, 411 S.W.3d at 915 (Cochran, J., concurring).

We reviewed the entire recorded statement Rollins voluntarily gave the police. Rollins repeatedly stated he was compelled to kill K.L. because three men threatened

9

to kill him and his kids if he didn't. Rollins also stated another man was outside K.L.'s house with a gun waiting on him to kill K.L. Rollins stated, more than once, the synthetic marijuana given to him by one of the men didn't take effect until after he shot K.L. In fact, Rollins stated that the synthetic marijuana didn't take effect until he was being chased into the ditch, where it "hit him like a ton of bricks." He stated, when first responders arrived at the scene, the effects of the synthetic marijuana prevented him from reporting the men who threatened to kill him and his kids if he didn't kill K.L. But nowhere in the video statement does Rollins express killing K.L. because *he didn't know what he was doing or that killing K.L. was wrong*. Therefore, viewing the evidence in a light favoring an involuntary intoxication instruction, we cannot say the trial court erred in refusing the instruction. *See Maciel*, 631 S.W.3d at 722. We overrule issue two. Having overruled both of Rollins's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on February 1, 2023
Opinion Delivered August 30, 2023
Do Not Publish

Before Golemon, C.J., Horton and Johnson, JJ.

10