ACCEPTED
01-15-00274-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
10/13/2015 11:11:38 AM
CHRISTOPHER PRINE
CLERK

**NO. 01-15-00274-CR**
**IN THE COURT OF APPEALS**
**FOR THE FIRST DISTRICT OF TEXAS**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
10/13/2015 11:11:38 AM
CHRISTOPHER A. PRINE
Clerk

**ERIC SAMUEL TUCKER**
*Appellant*

**v.**

**THE STATE OF TEXAS**
*Appellee*

On Appeal from Cause Number 1428647
In the 184th District Court of Harris County, Texas
Honorable Jan Krocker, Presiding

**BRIEF FOR APPELLANT**

**Oral Argument Requested**

**ALEXANDER BUNIN**
Chief Public Defender
Harris County, Texas

**CHERI DUNCAN**
Assistant Public Defender
Texas Bar No. 06210500
1201 Franklin, 13th Floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax: (713) 368-9278
cheri.duncan@pdo.hctx.net

**Counsel for Appellant**

## IDENTITY OF PARTIES AND COUNSEL

| | |
|---|---|
| APPELLANT: | Eric Samuel Tucker<br>TDCJ# 01983465<br>Stiles Unit, TDCJ<br>3060 FM 3514<br>Beaumont, TX 77705 |
| TRIAL PROSECUTOR: | Farnaz Faiaz<br>Assistant District Attorney<br>Harris County Texas<br>1201 Franklin St, 6th Floor<br>Houston, TX 77002 |
| DEFENSE COUNSEL AT TRIAL: | Emily Munoz Detoto<br>Attorney at Law<br>917 Franklin, 4th Floor<br>Houston, TX 77002 |
| COUNSEL ON APPEAL FOR APPELLANT: | Cheri Duncan<br>Assistant Public Defender<br>Harris County TX<br>1201 Franklin St, 13th Floor<br>Houston, TX 77002<br>cheri.duncan@pdo.hctx.net |
| PRESIDING JUDGE | Hon. Jan Krocker<br>184th District Court<br>Harris County, TX<br>1201 Franklin St, 17th Floor<br>Houston, TX 77002 |

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL.................................................................ii

TABLE OF CONTENTS.....................................................................................iii

INDEX OF AUTHORITIES ................................................................................ v

STATEMENT OF THE CASE ............................................................................. 1

ISSUE PRESENTED........................................................................................ 1

> **MR. TUCKER WAS UNDER THE INFLUENCE OF SYNTHETIC MARIJUANA. HE TESTIFIED THAT HE WAS BLACKED OUT AND DID NOT ASSAULT HIS GIRLFRIEND WITH SCISSORS. DID THE STATE PROVE BEYOND A REASONABLE DOUBT THAT MR. TUCKER'S CONDUCT WAS VOLUNTARY AND THAT HE ACTED INTENTIONALLY OR KNOWINGLY?**

STATEMENT OF FACTS........................................................................................ 1

SUMMARY OF THE ARGUMENT ............................................................................. 4

ARGUMENT ........................................................................................................ 5

ISSUE ONE ........................................................................................................ 5

    A. STANDARD OF REVIEW ...................................................................... 6

    B. THE EXTRANEOUS OFFENSES THAT ALLEGEDLY OCCURRED THAT SAME EVENING WERE NOT EVIDENCE OF MENS REA OR VOLUNTARY CONDUCT IN THE ALLEGED ASSAULT WITH THE SUTURE SCISSORS ........................................ 6

    C. MR. TUCKER WAS IN A BLACKOUT STATE INDUCED BY A BAD BATCH OF SYNTHETIC MARIJUANA. HIS ACTIONS WERE INVOLUNTARY, AND HE LACKED THE MENS REA FOR AGGRAVATED ASSAULT AS ALLEGED IN THE INDICTMENT 11

    D. THERE WAS NO EVIDENCE TO SUPPORT THE TRIAL COURT'S IMPLIED FINDING THAT MR. TUCKER'S ACTIONS IN THE ASSAULT WERE VOLUNTARY.................... 13

E. There was no evidence to support the trial court's implied finding that Mr. Tucker acted intentionally or knowingly ............................ 16

Conclusion ........................................................................................................... 18

Prayer ................................................................................................................... 18

Certificate of Service .......................................................................................... 19

Certificate of Compliance .................................................................................. 19

# INDEX OF AUTHORITIES

## Cases

*Farmer v. State*, 411 S.W.3d 901 (Tex. Crim. App. 2013)......................................13, 14, 16

*Landrian v. State*, 268 S.W.3d 232 (Tex. Crim. App. 2008) ...........................................7, 11

*Mendenhall v. State*, 77 S.W.3d 815 (Tex. Crim. App. 2002)................................................ 11

*Ramirez-Memije v. State*, 44 S.W.3d 624 (Tex. Crim. App. 2014)....................................... 11

*Robinson v. State*, __ S.W.3d __, 2015 Westlaw 4068109 at *4 (Tex. Crim. App. July 1, 2015) ....................................................................................................................... 6

*Rogers v. State*, 105 S.W.3d 630 (Tex. Crim. App. 2003) ..................................................... 13

## Statutes

TEX. PENAL CODE § 6.01(a)........................................................................................... 11

TEX. PENAL CODE § 22.02(a)......................................................................................... 16

## STATEMENT OF THE CASE

Eric Samuel Tucker was charged with aggravated assault of his girlfriend, causing serious bodily injury, with a deadly weapon. Scissors were the alleged deadly weapon. After being found sane and competent by a court-appointed psychiatrist, and being admonished about his rights, Mr. Tucker waived a trial by jury (2 RR at 8). He testified that he was blacked out and does not recall any of the events of that evening. The Hon. Jan Krocker found him guilty of the indicted offense and assessed punishment at 30 years in prison. She entered judgment on February 18, 2015. Notice of appeal was filed on February 20, 2015.

## ISSUE PRESENTED

**Mr. Tucker was under the influence of synthetic marijuana. He testified that he was blacked out and did not assault his girlfriend with scissors. Did the state prove beyond a reasonable doubt that Mr. Tucker's conduct was voluntary and that he acted intentionally or knowingly?**

## STATEMENT OF FACTS

Eric Tucker and Kimberly Lockett began dating about three years before the incident from which this case arose. They lived together in her apartment (3 RR at 13). Their relationship was notable for a pattern of playing rough with each other and engaging in "makeup sex" that he would initiate with her after disagreements. The "horseplay" was such a part of their relationship that Ms. Lockett did not find anything especially alarming about Mr. Tucker's allegedly violent conduct earlier that same night (3 RR at 143).

1

That evening, before the indicted offense, the couple fought, then had makeup sex. Ms. Lockett testified that afterwards, while they were sitting on the couch, Mr. Tucker scratched her with a pill packet and punched her in the face, then chased her into the bedroom and forced her onto the bed (3 RR at 26). She testified that Mr. Tucker tried to force her to have sex again:

Q.  Is he successful?

A.  No, he's not.

Q.  Uh, tell us what happens from that point on.

A.  I told him that his --

Q.  You can tell us.

A.  His dick wasn't gonna get him out of this one. He backs up and pulls me up by my hair and pulls me back in like the hallway space of the -- uh -- between the -- bathroom and the bedroom.

Q.  What did you mean when you told him, "Your dick's not gonna get you out of this one"?

A.  Because he likes to use it as a -- as a gift -- uh -- how can you say -- uh -- as -- he likes to use it to like, you know, maybe like persuade me to -- uh -- take him back, or something like that.

Q.  Okay. Sort of like sex as a pacifier?

A.  Yes.

(3 RR at 42). Apparently, this chain of events was not out of the ordinary, and did not alarm Ms. Lockett:

Q.  During the course of this assault, from when it first happens with the first cut across you with that pill container until the very end,

2

what's going through your mind? Is it one thing? Is it multiple things?[1]

A. At first, I just thought it was -- it was just like, you know, maybe like a little too much of roughness on his behalf, *but then when he pulled my hair and pulled me off the ground*, then I -- that's when I considered it's going a little too far, and I was having to really defend myself beyond what I norm -- what -- somebody should ever do.

(3 RR at 69)(emphasis added).

Ultimately, Ms. Lockett testified, Mr. Tucker trapped her in the bathroom and began to assault her with a pair of suture scissors while smoking synthetic marijuana, or "cush." As she struggled to take the scissors away, they broke in half (3 RR at 62). One half was admitted into evidence at trial; the state never explained what happened to the other half. Ms. Tucker ended up with extensive injuries that required multiple surgeries to repair (3 RR at 181).

Despite their history of roughhousing, Mr. Tucker's behavior in the bathroom was completely unexpected, Ms. Lockett testified:

Q. …(W)hat are your thoughts during this process?

A. That I just got off work and now I'm having to fight for my life on my day off.

Q. And what do you mean by that?

A. That was -- it was -- meaning that this was something I did not expect. At all. And I just didn't know where -- where this all came from.

---

[1] Although the prosecutor repeatedly referred to the events of the evening as a single assault, this is neither legally nor factually correct, as discussed in Section E below.

(3 RR at 70).

Mr. Tucker took the stand in his own defense, but he could not recall anything about the evening from the time he sat on the couch, feeling dizzy, until he woke up in a police car. He denied committing the alleged offense (3 RR at 210).

Officer Jerome T. Owens testified that he found Mr. Tucker unresponsive on the apartment floor with 1/2 pair of scissors next to him on the floor, shiny and red (3 RR at 153). The officer called paramedics, and Mr. Tucker became responsive when they sat him up (3 RR at 157). He was treated at scene, and was not taken to a hospital (3 RR at 159).

## SUMMARY OF THE ARGUMENT

Aggravated assault by conduct, such as the offense alleged in this case, is a result-of-conduct crime. The state must prove beyond a reasonable doubt that the defendant had the requisite mens rea (in this case, intentionally or knowingly) to cause a specific serious bodily injury or to use or display a deadly weapon. The nature of the defendant's conduct is not relevant.

The evidence in this case showed that on the night of the alleged offense, Mr. Tucker was in a blackout state induced by a smoking synthetic marijuana. He had used synthetic marijuana for more than three years and always found it to make him feel mellow, similar to marijuana. There was no evidence that he knew or had any reason to suspect that cush could cause him to black out or become violent.

4

The state offered some evidence that Mr. Tucker might have been acting voluntarily during earlier incidents that evening, but it had no evidence that his alleged assault with suture scissors was the product of voluntary conduct, or was intentional or knowing. Instead, the state tried to paint the entire evening as one single, ongoing assault.

However, because each assaultive contact is a separate offense, the state was required to establish that the particular offense alleged – an attack with scissors that caused serious injuries to Ms. Lockett – was both a voluntary act and was done with the requisite mens rea. Because the state failed to prove either of these elements beyond a reasonable doubt, the evidence was legally insufficient to support the judgment. Mr. Tucker's conviction should be reversed.

## ARGUMENT

The indictment alleged that Mr. Tucker intentionally and knowingly caused serious bodily injury to Kimberly Lockett, with whom he had a dating relationship, by cutting her with a deadly weapon, namely, scissors (CR at 25). Mr. Tucker has consistently denied that he committed any offense. He testified that as he was getting ready to leave for work that evening, he felt dizzy and sat down. "I was in a blackout," he said (3 RR at 210). Further, Mr. Tucker has consistently maintained that Ms. Lockett is a voodoo practitioner, and that she used voodoo to "contaminate" him that night. *See* Defendant's Exhibits 4 and 5 (6 RR at 78).

## A.     Standard of Review

In bench trials, as in jury trials, an appellate court reviews the sufficiency of the evidence in the light most favorable to the verdict to decide whether a hypothetical rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. A conviction that is not rationally based on the evidence violates the Due Process Clause, whether a judge or jury sits as the fact finder in the case. *See Robinson v. State*, __ S.W.3d __, 2015 Westlaw 4068109 at *4 (Tex. Crim. App. July 1, 2015).

## B.     The extraneous offenses that allegedly occurred that same evening were not evidence of mens rea or voluntary conduct in the alleged assault with the suture scissors.

The indicted offense was the last of three that the state presented evidence about. The first two alleged extraneous offenses that evening were: 1) a punch to Mr. Lockett's face while they sat on the couch; and 2) a possibly non-consensual attempted sexual encounter in the bedroom. The state tried to paint a picture of a single assaultive offense that began on the couch, continued into the bedroom, and ended in the bathroom. This was a necessary attempt to overcome the lack of evidence of mens rea and voluntary act for the particular aggravated assault in this case. By presenting the case in this manner, the state made a critical mistake –it offered no evidence of intent or voluntary act during the particular assault for which Mr. Tucker was on trial.

As a matter of law, whether Mr. Tucker caused Ms. Lockett serious bodily injury or used a deadly weapon or both, as alleged in the indictment, this particular offense

was a single assault. The gravamen of the offense is the specific type of assault. *See Landrian v. State*, 268 S.W.3d 532, 536 (Tex. Crim. App. 2008). The alleged incidents earlier in the evening – scratching and punching Ms. Lockett on the couch, then attempting sex with her in the bedroom – were not part of the indicted offense. The evidence that Mr. Tucker may have been conscious during those acts (scant though it was) is not evidence of mens rea or voluntary act for the alleged attack with suture scissors.

In fact, the evidence showed that by the time Mr. Tucker began assaulting Ms. Lockett with the scissors and causing serious bodily injury, he no longer was acting voluntarily, even if the earlier alleged conduct was voluntary, as the state tried to show. The state's position was that the earlier acts were voluntary because Mr. Tucker was able to talk to Ms. Lockett and appeared to understand what she was saying to him. This no longer was the case during the alleged aggravated assault with the suture scissors, however:

Q. Are you saying anything to him at that point?

A. "Why are you doing this?" Uh, "Please stop. I'll do whatever," and he steady (sic) pushing me down.

Q. Were you screaming for help at any point?

A. Yes, I was.

Q. And did help ever arrive?

A. No.

7

Q.      Is the Defendant saying anything?

A.      Not at that moment.

(3 RR at 44). Ms. Lockett's testimony continued:

Q.      Okay. Let me stop you right there. Where does he get these scissors?

A.      I have no idea.

Q.      What do the scissors look like?

A.      They're suture scissors.

Q.      When he's cutting your hair, what's he doing with the hair?

A.      He's feeding it to me while my head is in the toilet. … He would raise me up and feed the hair in my mouth.

Q.      Was he saying anything?

A.      He didn't say anything.

(3 RR at 45). Ms. Lockett then testified that after he cut her hair, he pulled out her earrings and began to cut on her left ear:

A.      And I'm fighting, trying to stop him, but then he pulls some more and then he cut again, he cut again, and I just see blood dripping. …

Q.      Were you screaming?

A.      Yes, I was.

Q.      Was he saying anything when he's cutting your ear?

A.      Nothing at all.

8

(3 RR at 46). His eerie silence continued as they stood and wrestled for control of the

scissors:

> Q. Okay. When he – when the Defendant is in this position where he's standing behind you and his arms are coming over his head reaching forward towards you (indicating), is he saying anything to you?
>
> A. No.

(3 RR at 50). She testified that they fell back to the floor:

> Q. What is he doing – what is the Defendant doing with his right hand?
>
> A. He's stuffing his hand repeatedly down my throat to keep me from screaming.
>
> Q. Is he saying anything?
>
> A. No, he's not.

(3 RR at 54). She testified that he began to stab her wrist with the then-broken half of

the scissors as he lay on top of her, growling and finally passing out:

> Q. Are you able to get his body off of yours?
>
> A. No, I was not.
>
> Q. What does he do from this position?
>
> A. He's still (indicating) – uh – moving it back and forth in my wrist.
>
> Q. And when you say "it," are you talking about the scissors?
>
> A. Yes.
>
> Q. Okay. And does anything else happen from this point?
>
> A. Then, from that point on, he starts to make like a – a growling sound and like shaking his head like he's in a biting situation.

Q.   What does it sound – what does it sound like?

A.   It's just (making growling sound).

Q.   Can you see from the position he was in what he's doing to you?

A.   No, I do not (sic).

Q.   Okay. At this point, do you still have sensation left in your hand?

A.   No, I do not.

Q.   Okay. What happens from this position?

A.   Then he rolls over and he passes out.

(3 RR at 56).

Mr. Tucker's actions were involuntary – the result of an outside force over which he had no control. In both the guilt and punishment stages of the trial, he attributed this to some kind of voodoo cast upon him by Ms. Lockett, because he was blacked out and does not recall the assault. In fact, the evidence shows a different cause – the synthetic marijuana rolled in cough syrup that he smoked during the assault in the bathroom:

Q,   Okay. Was the Defendant under the influence of any substance that you know of that night?

A.   Yes, I do.

Q.   Okay. And what substance do you know of that he was under?

A.   Synthetic marijuana.

Q.   Okay. And how do you know that?

10

A. Because he had it already mixed up and he was smoking it – it during the time he was cutting my hair and my ear.

Q. Okay. Tell us what you mean by that.

A. At some point – I'm – I'm really not even sure – at the point where he had put my head in the toilet and was gonna – I'm thinking maybe he's at – he's still at the door, or he ran off and grabbed his smoke and lit it and then brought it in the bathroom. And as he's lighting his smoke, whatever, he begins to – that's when he begins to really cut my hair and cut my ear, so he was smoking it while he was doing this.

(3 RR at 72).

Having chosen to try Mr. Tucker for aggravated assault with scissors, the state was required to prove each element of that specific offense. This required proof beyond a reasonable doubt that the defendant was acting voluntarily, and that he intended or knew it was likely that he would cause serious bodily injury to Ms. Lockett, or that he knew or intended that he was using the scissors as a deadly weapon. *Landrian*, 268 S.W.3d at 537. The state failed to satisfy its burden of proof.

**C. Mr. Tucker was in a blackout state induced by a bad batch of synthetic marijuana. His actions were involuntary, and he lacked the mens rea for aggravated assault as alleged in the indictment.**

Two defenses are "readily available" to a defendant who was unconscious or semi-conscious at the time of an alleged offense: the defendant may argue that he lacked the mens rea necessary for criminal liability, or that he did not engage in a voluntary act. *See Mendenhall v. State*, 77 S.W.3d 815, 818 (Tex. Crim. App. 2002). In Texas, actus reus requires that a person *voluntarily* engage in an act (or omission or possession). Criminal

11

responsibility is established if the person voluntarily engaged in the act, omission, or possession with the mental state required for the specific offense. *See* TEX. PENAL CODE § 6.01(a). *See, also, Ramirez-Memije v. State*, 44 S.W.3d 624, 627-8 (Tex. Crim. App. 2014).

Mr. Tucker was clear and steadfast – he was blacked out and does not recall any of the alleged assault:

> A. But I didn't do that. That's why I claimed that I was possessed. I thought I was possessed, but it's not realistic.
>
> Q. Right.
>
> A. So, therefore, she had to like contaminate me, but it's due to the fact of what she does indulge in.

(3 RR at 210).

> Q. … The first day you were brought to Court … (d)o you remember saying you needed an exorcism?
>
> A. Yes, ma'am.
>
> Q. Okay. And why is it that you thought you needed an exorcism?
>
> A. From 5-11 to 5-16, I started seeing things and I had a conclusion that she had – she'd been putting stuff in my food and my drink. …

(3 RR at 211).

> Q. Let's talk about the date of the offense, right? You've repeatedly told me that you believe that you were contaminated, or someone had possessed you, right?
>
> A. Pretty much contamination, realistically.
>
> Q. Okay. And you're believing that the Complainant did this to you; right?

12

A. Yes, ma'am.

Q. Okay. Uh, now you know that's very hard to believe, don't you, Eric?

A. I understand. I understand.

Q. Uh, and you told this to the psychiatrist that evaluated you, right?

A. Yes, I told it to the psychiatrist.

(3 RR at 213).

Although the court-ordered psychiatrist concluded that Mr. Tucker was both sane at the time of the offense and competent to stand trial, and Mr. Tucker believed his blackout was caused by voodoo, the evidence at trial actually showed that Mr. Tucker was acting involuntarily due to the unanticipated side effects of synthetic marijuana. The evidence further showed that he did not act intentionally or knowingly when he allegedly assaulted Ms. Lockett with the suture scissors. The state tried to rebut this by showing that he was able to communicate with her earlier in the evening, but as discussed in Section E below, the state's attempt to paint a picture of one drawn-out assault could not make up for its lack of evidence about voluntariness and mens rea and voluntary act during the indicted offense, aggravated assault with scissors, causing serious bodily injury.

**D. There was no evidence to support the trial court's implied finding that Mr. Tucker's actions in the assault were voluntary.**

Movement is considered involuntary if the movement was "the product of *unconsciousness*, hypnosis or other non-violent impetus," *Farmer v. State*, 411 S.W.3d 901,

13

906 (Tex. Crim. App. 2013), citing *Rogers v. State*, 105 S.W.3d 630, 638 (Tex. Crim. App. 2003). In this case, the evidence was legally insufficient evidence to prove beyond a reasonable doubt that the aggravated assault in the bathroom included any voluntary act. In fact, the evidence showed that Mr. Tucker's movement was the "product of unconsciousness," as contemplated by *Farmer*.

In *Farmer*, the Court of Criminal Appeals affirmed the DWI conviction of a defendant who claimed that his action of driving while he did not have the normal use of his faculties was involuntary because he took a sleeping pill his wife accidentally left out for him instead of his usual morning muscle-relaxant pill. The Court drew a distinction between mistaken intoxication and involuntary intoxication: "Even if Appellant took the medication in error, that error was made because Appellant did not take the time to verify the medication he was taking, *although he knew that he was prescribed medications that could have an intoxicating effect*." *Farmer*, 411 S.W.3d at 908 (emphasis added).

In contrast to *Farmer*, the state offered no evidence that Mr. Tucker had any idea that the cush he used might make him violent and dangerous. In fact, the evidence affirmatively disproved any knowledge that the cush could have such an effect. Ms. Lockett testified that Mr. Tucker used synthetic marijuana often, and that he had never responded to it as he did that night:

> Q. Okay. Was it the first time -- I guess -- was this time the first time that he had been under this concoction?
>
> A. No.

14

Q.     Okay. Uh, was this typical behavior for him that he exhibited that night -- uh -- of how he acts when he's under the influence of the Delsym and the -- and the -- the synthetic marijuana?

A.     No.

Q.     Okay. Uh, was it enhanced on this particular evening?

A.     Yes.

(3 RR at 76). Mr. Tucker's own testimony made this point even clearer – he had no reason to suspect that the cush he smoked that night could cause him to black out and commit a violent crime:

Q.     Okay. Uh, when did you start – uh – smoking cush?

A.     It was – uh – throughout the day.

Q.     No, I'm talking about in your life.

A.     Oh, okay.

Q.     When did you first –

A.     Uh, like – I did it like three and a half years ago.

Q.     Okay.

A.     Or four.

…

Q.     Okay. And – uh – just briefly, how does that – uh – cush laced with cough syrup affect you?

A.     It doesn't.

Q.     It doesn't?

15

A. I just gives me the – uh – uh – same – it mimics the marijuana, so it gives me that feeling, but I don't feel crazy or nothing, or delirious, or psychotic. I don't feel that way.

Q. Okay.

A. I feel relaxed.

(3 RR at 206).

Because the evidence was undisputed that Mr. Tucker did not intend or know that smoking Delsym-laced cush could make him feel anything other than mellow and relaxed, and the state had no evidence to rebut his testimony that he was in a blackout during the incident, the state did not prove beyond a reasonable doubt that the alleged aggravated assault was not the result of involuntary conduct that occurred while Mr. Tucker was actually unconscious. The bad cush he smoked was an intervening cause of his conduct.

**E.** **There was no evidence to support the trial court's implied finding that Mr. Tucker acted intentionally or knowingly.**

There is one other key difference between *Farmer* and this case: the offense involved in *Farmer*, driving while intoxicated, is a strict liability crime. For this reason, the Court of Criminal appeals concluded, it did not matter that the defendant had taken the wrong prescription pill by mistake, rather than intentionally, knowingly, or recklessly. *Farmer*, 411 S.W.3d at 907.

Assault with a deadly weapon, in contrast, is not a strict liability crime. Based on the indictment in this case, the state was required to prove:

16

1) Mr. Tucker *intentionally or knowingly* caused bodily injury; and

2) Mr. Tucker caused serious bodily injury or used or exhibited a deadly weapon, specifically, scissors.

*See* TEX. PENAL CODE § 22.02(a)(emphasis added). The state was never able to show Mr. Tucker was acting voluntarily, or that the stabbing was committed intentionally or knowingly.

Ms. Lockett testified repeatedly that Mr. Tucker did not appear to be in his right mind. The prosecutor rephrased the question several times to give her the chance to correct her testimony, but succeeded only in getting her to admit that some of his conduct that night appeared to be intentional:

Q. Okay. Uh, was it so enhanced or was his condition in such a state that you felt he was not in his right mind?

A. Correct. Yes.

Q. Well, let me ask you this: Did you think he was in his right mind?

A. No, I did not.

Q. Okay. Did you think that what he was doing *that night* he meant to do to you?

A. *Part of it* had significant -- uh -- significant value so, yes, I did.

(3 RR at 76)(emphasis added). The problem with this attempt at rehabilitating the witness is that the "part of it" that was "significant" involved an earlier alleged incident on the couch, not the indicted offense. *See* 3 RR at 27. During cross-examination, Ms. Lockett confirmed that it seemed like Mr. Tucker was out of his mind (3 RR at 106). Mr. Tucker did not remember any of the alleged incidents that night (3 RR at 208). The

17

evidence was legally insufficient to prove beyond a reasonable doubt that Mr. Tucker acted intentionally or knowingly when he caused serious bodily injury to Ms. Lockett using a deadly weapon, as alleged in the indictment.

## CONCLUSION

If there were any evidence in the record that Mr. Tucker knew or was reckless about the effects of cush, the state's evidence might be considered legally sufficient. Instead, the undisputed evidence showed that Mr. Tucker was a long-time user of cush and knew only that it made him feel relaxed, like marijuana. Further, the state offered no evidence that Mr. Tucker was not blacked out, as he testified. The evidence was legally insufficient to prove each element of aggravated assault as alleged in the indictment, beyond a reasonable doubt.

## PRAYER

Because the evidence was insufficient to support the judgment against him, Mr. Tucker respectfully requests this Court to reverse his conviction and enter a judgment of acquittal.

Respectfully submitted,

**Alexander Bunin**
Chief Public Defender
Harris County Texas

*/s/ Cheri Duncan*

_____
**Cheri Duncan**
Assistant Public Defender
Texas Bar No. 06210500

18

1201 Franklin, 13th floor
Houston Texas 77002
(713) 368-0016 telephone
(713) 437-4318 e-fax
cheri.duncan@pdo.hctx.net

## CERTIFICATE OF SERVICE

I certify that a copy of this brief was served electronically on the Harris County

District Attorney's Office on October 13, 2015.

*/s/ Cheri Duncan*

_____

Cheri Duncan

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with Rule 9.2, TEX. R. APP. PROC. It was prepared on

a computer using 14-point Garamond type. It contains 4,228 words.

*/s/ Cheri Duncan*

_____

Cheri Duncan