

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00449-CR

_____

BRIAN COLLINS, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 211th District Court
Denton County, Texas
Trial Court No. F17-1764-211

---

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

A jury found Appellant Brian Collins guilty of the third-degree-felony offense of evading arrest or detention with a vehicle. *See* Tex. Penal Code Ann. § 38.04(b)(2)(A). Collins pleaded "true" to two enhancement paragraphs alleging prior felony convictions, and his punishment range was thus enhanced to that of a habitual offender. *See id.* § 12.42(d). The jury assessed punishment at 95 years' confinement, and the trial court sentenced Collins accordingly.

In three issues, Collins complains that (1) the trial court erred by refusing his requested jury instruction on involuntary intoxication; (2) the trial court erred by not instructing the jury on temporary insanity due to voluntary intoxication; and (3) his punishment was excessive and thus violated his Eighth Amendment rights. We will affirm.

## I.
## Background

On the evening of April 30, 2017, Andrew O'Brien was entering northbound Interstate 35 in Lewisville when he saw a white U-Haul pickup truck being driven erratically in a parking lot. According to O'Brien, the truck's driver was "peeling out" and driving over curbs. The truck then entered I35, and O'Brien saw it speeding, swerving, and bumping into guardrails and cement dividers. Concerned that the truck's driver was intoxicated, O'Brien called 9-1-1.

Kathryn Meadows was also driving on I35 in Lewisville that evening. While traffic was at a standstill, the white U-Haul truck rear-ended Meadows's vehicle twice, and when she tried to get the driver's attention, he drove off. Meadows followed the truck and called 9-1-1. While on the phone with the dispatcher, Meadows watched the truck speeding, swerving, almost hitting cars, and hitting concrete barricades.

Officer Antonio Barletta with the Lewisville Police Department was dispatched in response to reports of a possible drunk driver. When Officer Barletta caught up with Meadows and the white truck, he turned on his lights and then his siren after seeing the truck speeding and unsafely changing lanes. Even though Officer Barletta had activated his lights and siren, the driver did not stop. Using his loudspeaker, Officer Barletta then commanded the driver to pull over and stop. The driver ignored those instructions and continued to drive evasively and at high rates of speed.

The chase continued north on I35 and eventually ended in Denton when the driver stopped the truck in the middle of the highway. The driver—Collins—got out of the truck and was arrested.

At trial, Collins testified in his defense. At the time of his arrest, Collins was in the process of moving his belongings because he and his roommate, Mike Marsh, had been evicted from their apartment. Collins and Marsh had rented the truck and had been moving their possessions for a couple of days.

Collins testified that he had not eaten anything the day of the incident and that sometime that day, his neck and back "started stiffening up." Collins called Marsh and

asked him for some hydrocodone, for which Marsh had a prescription. Marsh told Collins to look in Marsh's backpack, which was in the truck's cab. Collins found some pills in a bag inside the backpack, but he did not know which pill was hydrocodone. Collins took photographs of the pills and sent the photographs to Marsh. Marsh responded with a photograph of one of the pills. Collins took that pill, which he believed was hydrocodone because that was what he had asked Marsh for.

At trial, Collins said that he did not know what he took. He testified that he had taken hydrocodone before without any reaction. But the medication he took on April 30 caused him to "space[] out." He did not remember how he got to Lewisville or how he got on the highway. He did, however, remember traffic being at a standstill. He also remembered his "head hitting the steering wheel" and knowing that he had "bumped someone."

Collins testified that he did not immediately notice the police lights or sirens. And, because he had the truck's widows up and the radio on, he denied hearing Officer Barletta's loudspeaker commands to pull over. He also claimed that until he viewed Officer Barletta's dashcam video,[1] he had no recollection of the police chase. He did remember having trouble following the police officer's instructions after the stop.

---

[1]The portion of the dashcam video showing the chase, the stop, and Collins's arrest at the scene was played for the jury during Officer Barletta's testimony.

Collins denied knowing that he was evading arrest but conceded that he might have been driving while intoxicated that evening. In addition to taking the hydrocodone, Collins admitted to drinking two beers that evening. He also admitted to not having a prescription for hydrocodone, but testified that he had had a prescription for it sometime in the 1980s. Collins acknowledged that hydrocodone is accompanied with a warning against taking it with alcohol.

Collins requested an involuntary-intoxication jury instruction, which the trial court denied. The jury found Collins guilty of evading arrest or detention with a vehicle.

During the punishment phase, Collins pleaded "true" to the State's allegations that he had been previously convicted of two felony offenses: aggravated assault of a peace officer and tampering with evidence. The State introduced evidence of Collins's prior criminal history, and Collins testified. The jury assessed Collins's punishment at 95 years' confinement. The trial court sentenced Collins accordingly.

Collins timely moved for a new trial, arguing that the jury's punishment verdict violated state and federal constitutional prohibitions against cruel and unusual punishment. *See* Tex. R. App. P. 21.4(a). The following day, the trial court signed an order denying the motion. *See* Tex. R. App. P. 21.6.

Collins has appealed.

## Jury Instruction on
## Involuntary Intoxication

In his first issue, Collins argues that the trial court erred during the guilt–innocence phase of trial by refusing his requested jury instruction on involuntary intoxication.

**A. Applicable law**

In reviewing a jury charge, we first determine whether error occurred; if not, our analysis ends. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). A trial court must charge the jury on a defensive theory to the charged offense when properly requested and raised by any evidence, regardless of its substantive character. *Brown v. State*, 955 S.W.2d 276, 279 (Tex. Crim. App. 1997) (discussing jury charge on voluntariness).

Involuntary intoxication is an affirmative defense. *Farmer v. State*, 411 S.W.3d 901, 908 (Tex. Crim. App. 2013) (Cochran, J., concurring). A defendant is entitled to this defense when the evidence shows that he exercised no independent judgment or volition in taking an intoxicant, and that as a result of his intoxication, he did not know his conduct was wrong. *See id.* at 912. Courts have recognized that a person's intoxication can be involuntary when the intoxication arises because of (1) the fault of another, such as through force, duress, or fraud; (2) the person's own accident, inadvertence, or mistake; (3) a physiological or psychological condition beyond the

person's control; or (4) a medically prescribed drug that causes unexpected side effects. *Id.* at 913.

**B. Analysis**

Collins admitted that he voluntarily ingested alcohol and a pill that he thought was hydrocodone and that, as a result, he was intoxicated at the time of the incident. Collins first asserts that if the pill he took was in fact hydrocodone, his intoxication was involuntary because it was caused by a prescribed drug that produced an unexpected side effect. But Collins did not have a prescription for hydrocodone. *See Mendenhall v. State*, 15 S.W.3d 560, 565 (Tex. App.—Waco 2000) (stating proof that a defendant took a prescribed medication according to the prescription can satisfy the first element of the involuntary-intoxication affirmative defense), *aff'd*, 77 S.W.3d 815 (Tex. Crim. App. 2002). Additionally, involuntary "[i]ntoxication by prescription medicine occurs only when the person has no knowledge that the medicine has possibly intoxicating side effects." *Woodman v. State*, 491 S.W.3d 424, 429 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (citing *Mendenhall*, 15 S.W.3d at 565–66). Here, there was no evidence that Collins did not know about hydrocodone's possible intoxicating side effects, especially when combined with alcohol. There was only evidence that he had taken hydrocodone before without "spacing out." *See id.* (concluding that trial court did not err by refusing involuntary-intoxication instruction where there was no evidence that appellant was unaware of the effects of the

7

morphine and Percocet that had been prescribed to her). Moreover, Collins knew that one should not combine hydrocodone and alcohol.

Collins next asserts that if the pill was not hydrocodone, his intoxication was involuntary because it was caused by either Marsh's fault or Collins's mistake. But the evidence does not show that some force, duress, or fraud on Marsh's part caused Collins's intoxication. *See Farmer*, 411 S.W.3d at 913 (noting that "courts uniformly recognize that intoxication caused by another's force, duress, or fraud, without any fault on the part of the accused, is involuntary" and that "Texas courts recognize this fraud or coercion prong of involuntary intoxication"). As for Collins's alleged mistake, it was no mistake; he voluntarily ingested an unknown medication that he believed was hydrocodone and voluntarily combined it with alcohol. *See id.* at 913–14 (explaining that "intoxication is involuntary if the defendant voluntarily took the substance but was unaware of its intoxicating nature" but that "this prong requires that the defendant's mistake reaches some threshold of reasonableness before the defense may be asserted at trial").

We conclude that the evidence at trial did not raise the defense of involuntary intoxication, and the trial court thus did not err by denying Collins's requested involuntary-intoxication instruction. We overrule his first issue.

## III.
## Jury Instruction on
## Temporary Insanity Due to Voluntary Intoxication

In his second issue, Collins argues that the trial court erred by failing to sua sponte instruct the jury at punishment on temporary insanity due to voluntary intoxication.

### A. Applicable law

Voluntary intoxication is not a defense to the commission of the offense, *see* Tex. Penal Code Ann. § 8.04(a), but a defendant may be entitled to a mitigation instruction on voluntary intoxication during the punishment phase of trial if there is evidence of temporary insanity caused by intoxication. *See id.* § 8.04(b), (c); *Martinez v. State*, 17 S.W.3d 677, 691 & n.14 (Tex. Crim. App. 2000). Temporary insanity caused by voluntary intoxication is considered a defensive issue. *See Williams v. State*, 273 S.W.3d 200, 222 (Tex. Crim. App. 2008) (comparing capital-murder mitigation issue with "a number of punishment mitigating factors that are *clearly defensive issues, including temporary insanity caused by intoxication*" (emphasis added)); *see also Lopez v. State*, 544 S.W.3d 499, 503 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citing *Williams*); *Roberson v. State*, No. 05-16-00298-CR, 2017 WL 1536510, at *2 (Tex. App.—Dallas Apr. 26, 2017, pet ref'd) (mem. op., not designated for publication) (same); *Logan v. State*, No. 02-11-00409-CR, 2013 WL 3488259, at *2 (Tex. App.—Fort Worth July 11, 2013, no pet.) (mem. op., not designated for publication) (same).

"[N]o rule or statute requires the trial judge to give instructions on traditional defenses and defensive theories absent a defendant's request." *Oursbourn v. State*, 259 S.W.3d 159, 179 (Tex. Crim. App. 2008). A trial court is not required to sua sponte instruct the jury on a defensive issue that the defendant does not request, and a defendant may forfeit a defensive issue by not preserving it at trial. *See Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013). A defendant cannot complain on appeal about the trial court's failure to include a defensive instruction that he did not preserve by request or objection. *Id.*

## B. Analysis

As noted, temporary insanity due to voluntary intoxication is a defensive issue. *See Williams*, 273 S.W.3d at 222; *Lopez*, 544 S.W.3d at 503; *Roberson*, 2017 WL 1536510, at *2; *Logan*, 2013 WL 3488259, at *2. Collins neither objected to the charge nor requested an instruction based on temporary insanity due to voluntary intoxication. Accordingly, he did not preserve his second issue. *See Vega*, 394 S.W.3d at 519; *Lopez*, 544 S.W.3d at 503; *see also Roberson*, 2017 WL 1536510, at *2 ("Here, the record shows appellant did not request an instruction in the charge that the jury could consider the mitigating effect of temporary insanity caused by intoxication. Because the trial court has no duty to give an instruction on defensive issues when not requested, we overrule his first issue."); *Logan*, 2013 WL 3488259, at *2 (relying on *Williams* and concluding that temporary insanity due to intoxication is a defensive issue on which a trial court has no duty to sua sponte instruct the jury and that charge was not

10

erroneous where defendant failed to request the instruction). We therefore overrule Collins's second issue.

## IV.
## Collins's Punishment

In his final issue, Collins argues that his 95-year sentence was excessive and was thus in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Collins pleaded "true" to enhancement paragraphs alleging two prior felony convictions: aggravated assault of a peace officer in 1993 and tampering with evidence in 2004. Collins's punishment range was thus enhanced to that of a habitual offender, and Collins could have been sentenced to "life, or for any term of not more than 99 years or less than 25 years." Tex. Penal Code Ann. § 12.42(d). Even though Collins's 95-year sentence was within the statutory punishment range, he argues that his sentence was disproportionate.

### A. Applicable law

Proportionality of punishment is embodied in the Eighth Amendment's ban on cruel and unusual punishment and requires that the punishment fit the offense. U.S. Const. amend VIII. Generally, a punishment that is within the statutory range is not excessive, cruel, or unusual under the Eighth Amendment and will not be disturbed on appeal. *State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016) (citing *Ex parte Chavez*, 213 S.W.3d 320, 323–24 (Tex. Crim. App. 2006)); *McCann v. State*,

11

No. 02-16-00450-CR, 2017 WL 3428849, at *3 (Tex. App.—Fort Worth Aug. 10, 2017, pet. ref'd) (mem. op., not designated for publication).

To determine whether a sentence is grossly disproportionate for a particular crime, the court must examine (1) the sentence's severity in light of the harm caused or threatened to the victim, (2) the offender's culpability, and (3) the offender's prior adjudicated and unadjudicated offenses. *Simpson*, 488 S.W.3d at 323 (citing *Graham v. Florida*, 560 U.S. 48, 60, 130 S. Ct. 2011, 2021–22 (2010)); *see McGruder v. Puckett*, 954 F.2d 313, 315 (5th Cir. 1992); *Moore v. State*, 54 S.W.3d 529, 542 (Tex. App.—Fort Worth 2001, pet. ref'd). In those rare times when this threshold is met and gross disproportionality is determined, the court must then compare the defendant's sentence with sentences given to other defendants in the same jurisdiction and with sentences imposed for the same crime in other jurisdictions. *Simpson*, 488 S.W.3d at 323 (citing *Graham*, 560 U.S. at 60, 130 S. Ct. at 2022); *Moore*, 54 S.W.3d at 542.

**B. Analysis**

Collins concedes that his punishment was within the statutory range and admits that he has "a significant criminal history." Nevertheless, he argues, the 95-year sentence was disproportionate because this was his first conviction for evading arrest, and his evading arrest did not endanger anyone or cause any death, injury, or property damage.

Here, even though Collins did not cause any property damage or kill or injure anyone while evading arrest, "the presence or absence of violence does not always

12

affect the strength of society's interest in deterring a particular crime or in punishing a particular criminal." *Rummel v. Estelle*, 445 U.S. 263, 275, 100 S. Ct. 1133, 1140 (1980). The intent of the evading-arrest statute "is to deter flight from arrest or detention by the threat of an additional penalty, thus discouraging forceful conflicts between police and suspects." *Duval v. State*, 367 S.W.3d 509, 513 (Tex. App.—Texarkana 2012, pet. ref'd) (citing *Alejos v. State*, 555 S.W.2d 444, 449 (Tex. Crim. App. 1977)). The statute "supports an important public policy—encouraging suspects to yield to a show of authority by law enforcement." *Id.* (citing *Redwine v. State*, 305 S.W.3d 360, 362 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd)).

The evidence shows that Collins's actions endangered Officer Barletta and other motorists on I35 on the evening of April 30, 2017: after Officer Barletta turned on his lights and siren, Collins refused to stop and continued to travel at high rates of speed (at times exceeding 90 miles per hour) and to weave in and out of traffic for several minutes before finally stopping. And during punishment, Collins—who was 46 years old at the time of trial—admitted to being in and out of trouble for most of his adult life. In addition to felony convictions for aggravated assault of a peace officer and tampering with evidence, Collins's criminal history included felony convictions for robbery and aggravated assault and numerous state-jail-felony theft convictions.

Based on this evidence, we do not find Collins's 95-year sentence to be grossly disproportionate. *See Simpson*, 488 S.W.3d at 323. Further, there is no evidence in the

13

record comparing Collins's sentence with sentences given to other defendants in the same jurisdiction or with sentences imposed for the same crime in other jurisdictions. *See id.* (citing *Graham*, 560 U.S. at 60, 130 S. Ct. at 2022). Accordingly, we overrule Collins's third issue.

## V.
## Conclusion

Having overruled Collins's three issues, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 30, 2019