

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00142-CR

_____

JEREMIAH STEVENSON, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 371st District Court
Tarrant County, Texas
Trial Court No. 1643374D

---

Before Bassel, Womack, and Walker, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

A jury found Appellant Jeremiah Stevenson guilty of aggravated robbery with a deadly weapon. After finding an habitual-offender enhancement to be true, the jury assessed Stevenson's punishment at confinement for life, and the trial court sentenced him accordingly. In one issue, Stevenson complains that the trial court failed to adequately instruct the jury on the law of voluntary acts. Because the trial court did not err in submitting the complained-of jury instruction, we will affirm.

### II. BACKGROUND

#### A. The Robbery

On the evening of May 3, 2020, Ashley Jefferson was working at a gas station in Fort Worth alongside her mother, who also worked at the gas station. While Jefferson was working the register, Stevenson entered the store and approached her. As he stepped up to the counter, Stevenson pulled a gun from his pants, pointed it at Jefferson, and demanded that she give him the money in the register.[1] As Jefferson moved to open the register, Stevenson fired his gun, with the bullet narrowly missing Jefferson and striking the wall behind the register that stocked cigarettes.[2] From a

---

[1]Jefferson's mother testified that Stevenson had also stated that he "was a convicted felon and he had nothing to lose."

[2]At trial, exhibits were admitted into evidence showing a bullet hole in the cigarette sign that was behind the register and a bullet hole in a pack of cigarettes.

crouched position, Jefferson opened the register, and Stevenson reached across the counter and grabbed money from the register.[3] Stevenson then asked for a pack of cigarettes, and Jefferson's mother—who had been standing behind the counter near Jefferson during the robbery—gave him one. After receiving the cigarettes, Stevenson walked out of the gas station. He was apprehended two days later walking along a set of railroad tracks.

## B. Stevenson's Defense that He Was "Blacked Out" During the Robbery and the State's Evidence that Stevenson Had Planned the Robbery

Stevenson testified in his own defense at trial.[4] He testified that two months prior to the robbery, he had been diagnosed with posttraumatic stress disorder (PTSD). While he had only been diagnosed shortly before the incident, he told the jury that he had suffered from PTSD for "over 10 years." Stevenson explained that his PTSD "can cause blackouts, flashbacks, [and] dissociative states" and that it can cause him to "act and perform complex actions and commit crimes . . . in rare instances." Stevenson averred that those crimes would not be voluntary acts because they would not be done consciously. Stevenson testified that he had a history of "blacking out" caused by his PTSD, estimating that he had "blacked out" approximately fifteen to twenty times. Stevenson stated that he would discover he had "blacked out" through "nightmares" and his interactions with others.

---

[3]Jefferson estimated that Stevenson took "close to $100.00."

[4]Jefferson, her mother, and several police officers also testified at trial.

Stevenson further explained that "high-stress situation[s]" could trigger his PTSD and cause him to "black out" and that he had one such situation leading up to the robbery. As to that situation, Stevenson testified that he had been living with his grandmother before the robbery but that the two of them had an argument and she had asked him to leave her home. According to Stevenson, the stress of that situation caused him to "black out." As recounted by Stevenson, after his conversation with his grandmother, he grabbed a bag of clothes, and the next thing he remembered was waking up in the woods in a disheveled state. He then began walking down some railroad tracks and walked up to a truck near the tracks to ask the occupant of the truck for a cigarette and to use a phone, when the police suddenly arrived and arrested him. He testified that he did not have any recollection of the robbery at the gas station. He also stated that he had been prescribed medication to treat his PTSD but that he had failed to take his medication in the days leading up to the robbery.

On cross-examination, the State put on evidence to rebut Stevenson's theory that the robbery had been committed while he was "blacked out." The State introduced into evidence papers that had been found in Stevenson's wallet when he was arrested two days after the robbery. One of the papers was a handwritten note containing the name and phone number of a bail bond company, and another paper was a handwritten list stating[5]:

---

[5]We have set out the handwritten list verbatim, including typographical errors and misspellings.

4

1.  at night fall get granny's car[6]; go to get my bags

2.  go to some grociery store switch licence plates switch plates everyday.[7]

3.  scope out ATM at across street from walmart only follow single female and wherever she stops at pull gun take purse should get 400$

4.  go to another area and go to grociery store and switch plates again. Go get bags at school.

5.  Go get Motel room for 1 night

6.  Next day find another drive threw ATM. Repeat process, get motel again. Repeat process everyday.

7.  First chance buy AR.10 and Plate carrier vest

8.  Then Go Navy Seal Militia and get U-haul and motercycle in back.

9.  Start Robing Banks[.]

## C. The Complained-Of Jury Instruction and the Jury's Verdict

The trial court's jury charge contained the following instruction on voluntary acts:

---

[6]Stevenson's grandmother drove a white Toyota Corolla. Jefferson testified that she saw a white Toyota Corolla pull into the gas station parking lot shortly before the robbery.

[7]Evidence was presented at trial indicating that in April 2020—one month prior to the robbery—police had investigated an incident involving the Toyota Corolla owned by Stevenson's grandmother, and that during their investigation, police observed that the front of the vehicle had a different license plate than the back of the vehicle.

You are instructed that a person commits an offense only if he voluntarily engages in conduct, including an act, omission, or possession. Conduct is not rendered involuntary merely because the person did not intend the results of his conduct. Therefore, if you believe from the evidence beyond a reasonable doubt that on the occasion in question, the Defendant, Jeremiah Stevenson, while in the course of committing theft of property and with intent to obtain or maintain control of said property, threaten[ed] or place[d] Ashley Jefferson in fear of imminent bodily injury or death, and the Defendant used or exhibited a deadly weapon, namely a firearm, as charged in the Indictment, but you further believe from the evidence, or you have a reasonable doubt thereof, that the aggravated robbery was not the result of a voluntary act of the Defendant, then you will acquit the Defendant and say by your verdict, "Not guilty."

Stevenson did not object to the trial court's jury charge.

As noted above, the jury ultimately found Stevenson guilty of aggravated robbery with a deadly weapon, and he was sentenced to confinement for life. This appeal followed.

## III. DISCUSSION

In his sole issue, Stevenson argues that the trial court failed to adequately instruct the jury on the law of voluntary acts and that the trial court's error caused him egregious harm. The State counters that the trial court correctly instructed the jury on the voluntariness issue and that even if the trial court erred, Stevenson has not shown egregious harm.

### A. Standard of Review

We must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In

6

reviewing a jury charge, we first determine whether error occurred; if not, our analysis ends. *Id.*

## B. Applicable Law

A jury charge's purpose is to inform the jury of the law applicable to the case and to guide them in its application. *Beltran De La Torre v. State*, 583 S.W.3d 613, 617 (Tex. Crim. App. 2019). A trial court has a duty to instruct the jury on the law applicable to the case regardless of any objection to the charge by the defendant. *Taylor v. State*, 332 S.W.3d 483, 486 (Tex. Crim. App. 2011); *see* Tex. Code Crim. Proc. Ann. art. 36.14. Although a trial court has no obligation to charge the jury on defenses absent a defendant's request, when the trial court sua sponte instructs the jury on a defense, that issue becomes the law applicable to the case, and the trial court must instruct on it correctly.[8] *Mendez v. State*, 545 S.W.3d 548, 552–53 (Tex. Crim. App. 2018); *Vega v. State*, 394 S.W.3d 514, 515, 519 (Tex. Crim. App. 2013). The trial court is ultimately responsible for the accuracy of the jury charge and the accompanying instructions. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007).

Under Texas law, "[a] person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession." Tex. Penal Code Ann.

---

[8]Voluntariness is a defense that may be raised by a defendant in a criminal case. *See Bundage v. State*, 470 S.W.3d 227, 231 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

7

§ 6.01(a). This voluntariness-of-conduct requirement applies to all offenses listed in the Penal Code, even those that do not require a culpable mental state and are considered strict-liability offenses. *Farmer v. State*, 411 S.W.3d 901, 905 (Tex. Crim. App. 2013). "Voluntariness" refers only to one's physical bodily movements. *Brown v. State*, 89 S.W.3d 630, 633 (Tex. Crim. App. 2002). If those physical body movements are the nonvolitional result of someone else's act, are set in motion by some independent non-human force, are caused by a physical reflex or convulsion, or are the product of unconsciousness, hypnosis, or other nonvolitional impetus, that movement is not voluntary. *Rogers v. State*, 105 S.W.3d 630, 638 (Tex. Crim. App. 2003). The issue of voluntariness is separate and distinct from that of the culpable mental state. *Febus v. State*, 542 S.W.3d 568, 574 (Tex. Crim. App. 2018). Thus, conduct is not rendered involuntary merely because an accused does not intend the result of his conduct. *Adanandus v. State*, 866 S.W.2d 210, 230 (Tex. Crim. App. 1993).

## C. Analysis

Stevenson contends that the trial court's jury charge failed to adequately instruct the jury on the law of voluntary acts. He argues that the instructions were inadequate because the trial court failed to clarify that the voluntary-acts inquiry referred only to bodily movements and was a separate inquiry from the culpable-mental-states inquiry and because the trial court did not define "involuntary acts." Thus, according to Stevenson, the jury could have conflated the voluntary-acts inquiry and the mental-states inquiry. Stevenson also complains that the instructions were

8

"particularly misleading" because the application portion of the voluntary-acts paragraph did not contain the applicable mental states. The State counters that a nearly identical charge to the one at issue here was approved by the Texas Court of Criminal Appeals in *Simpkins v. State*, 590 S.W.2d 129, 135 (Tex. Crim. App. [Panel Op.] 1979), *disapproved on other grounds by Lugo v. State*, 667 S.W.2d 144, 147 (Tex. Crim. App. 1984).

In *Simpkins*, the defendant was charged with murder, and he raised the issue of whether his gun had accidently discharged. *Id.* at 132, 134. The trial court in *Simpkins* gave the following instruction to the jury:

> You are instructed that a person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession. Conduct is not rendered involuntary merely because the person did not intend the results of his conduct. Therefore, if you believe from the evidence beyond a reasonable doubt that on the occasion in question the [defendant] did cause the death of [the victim] by shooting him with a gun, as alleged in the indictment, but you further believe from the evidence, or have a reasonable doubt thereof, that the shooting was the result of an accidental discharge of the gun while [third person] and the defendant were struggling or scuffling for the possession of the gun and was not the voluntary act or conduct of the defendant, you will acquit the defendant and say by your verdict not guilty.

*Id.* at 135. On appeal, the defendant complained that this instruction failed to give a complete charge on the law of accident and that it was a "misdirection of the law and a comment on the weight of the evidence."[9] *Id.* The Texas Court of Criminal

---

[9]The defendant complained that "[t]he charge impressed upon the jury that no involuntary conduct could ever be an offense, despite the various culpable mental states defined in the Penal Code." *Id.*

Appeals disagreed, holding that "this instruction fairly and adequately presented the issue raised" and that it "correctly stated the law as found in [the Penal Code]." *Id.*

In analyzing Stevenson's complaint, we note the similarities between the instruction given by the trial court below and the instruction given by the trial court in *Simpkins*. The first two sentences of the complained-of instruction below are almost verbatim of the first two sentences of the complained-of instruction in *Simpkins*.[10] *See id.* The third sentence—the application portion of the complained-of instruction—also similarly tracks the third sentence of the complained-of instruction in *Simpkins*.[11]

---

[10]Compare the complained-of instruction below,

> You are instructed that a person commits an offense only if he voluntarily engages in conduct, including an act, omission, or possession. Conduct is not rendered involuntary merely because the person did not intend the results of his conduct.

with the complained-of instruction in *Simpkins*,

> You are instructed that a person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession. Conduct is not rendered involuntary merely because the person did not intend the results of his conduct.

*Id.*

[11]Compare the complained-of instruction below,

> Therefore, if you believe from the evidence beyond a reasonable doubt that on the occasion in question, the Defendant, Jeremiah Stevenson, while in the course of committing theft of property and with intent to obtain or maintain control of said property, threaten[ed] or place[d] Ashley Jefferson in fear of imminent bodily injury or death, and the Defendant used or exhibited a deadly weapon, namely a firearm, as

10

*See id.* Nothing in *Simpkins* suggests that the instruction needed to explain that the voluntary-acts inquiry refers only to bodily movements and is a separate inquiry from the culpable-mental-states inquiry, and nothing in *Simpkins* suggests that a trial court giving an instruction on voluntariness must also define "involuntary acts."

Moreover, the application portion of the complained-of instruction in *Simpkins*—like the application portion of the complained-of instruction here—did not contain the applicable mental states. *See id.* And, here, the charge included the culpable-mental-states inquiry in other portions of the charge, with the trial court instructing the jury that,

> A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

> charged in the Indictment, but you further believe from the evidence, or you have a reasonable doubt thereof, that the aggravated robbery was not the result of a voluntary act of the Defendant, then you will acquit the Defendant and say by your verdict, "Not guilty."

with the complained-of instruction in *Simpkins*,

> Therefore, if you believe from the evidence beyond a reasonable doubt that on the occasion in question the [defendant] did cause the death of [the victim] by shooting him with a gun, as alleged in the indictment, but you further believe from the evidence, or have a reasonable doubt thereof, that the shooting was the result of an accidental discharge of the gun while [third person] and the defendant were struggling or scuffling for the possession of the gun and was not the voluntary act or conduct of the defendant, you will acquit the defendant and say by your verdict not guilty.

*Id.*

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

Now therefore, if you find and believe from the evidence beyond a reasonable doubt that [Stevenson] . . . did intentionally or knowingly, while in the course of committing theft of property and with intent to obtain or maintain control of said property, threaten or place Ashley Jefferson in fear of imminent bodily injury or death, and the Defendant used or exhibited a deadly weapon, namely a firearm, as charged in the Indictment, then you will find the Defendant guilty of aggravated robbery.

*Cf. Vasquez v. State*, 389 S.W.3d 361, 367 (Tex. Crim. App. 2012) (holding that where trial court properly defined term in abstract portion of jury charge, trial court was not required to "cut and paste" that definition into the application paragraph).

Rather than relying on *Simpkins*, Stevenson refers us to *Hervey v. State*, No. 05-17-00823-CR, 2019 WL 3729505 (Tex. App.—Dallas Aug. 8, 2019, pet. granted) (mem. op., not designated for publication) to support his position that the trial court failed to adequately instruct the jury on the law of voluntary acts.

In *Hervey*, the defendant was charged with murder. *Id.* at *3. At his trial, the trial court sua sponte gave the jury the following instruction on voluntariness-of-conduct:

An "Act" means a bodily movement, whether voluntary or involuntary, and includes speech.

. . . .

> For the offense of murder, you are instructed that a person commits an offense only if he voluntarily engages in conduct, including an act, omission, or possession. Conduct is not rendered involuntary merely because the person did not intend the results of his conduct.
>
> . . . .
>
> But if you do not so believe, or if you have a reasonable doubt thereof, or if you have a reasonable doubt that the shooting was not the voluntary act or conduct of the defendant, you will acquit the defendant and next consider whether the defendant is guilty of the offense of manslaughter.

*Id.*

On appeal following his conviction for murder, the defendant argued that the trial court's instruction on voluntariness-of-conduct was inadequate. *Id.* at *5. The Dallas Court of Appeals agreed, finding that the instruction was inadequate for three reasons. *Id.* at *9–11. First, the court held that the charge was incomplete because "[t]he jury was not instructed that it could acquit appellant if the jurors found that the shooting was caused by the independent act of [the victim] pulling on the gun and thereby causing appellant's finger to pull the trigger." *Id.* at *9. Second, the court held that the charge was inadequate because it limited the defense of voluntariness-of-conduct to murder, while there was no instruction applying the law of voluntariness-of-conduct to the lesser-included offenses of manslaughter and criminally negligent homicide. *Id.* at *10–11 (citing *Mendez*, 545 S.W.3d at 550–51). Third, the court held that the charge failed to make any distinction between a culpable mental state and voluntariness-of-conduct because "[n]owhere in the charge was it explained to the

13

jury that a finding of voluntariness-of-conduct is separate and distinct from a finding of a culpable mental state." *Id.* at \*11. After finding error in the charge and holding that the defendant was harmed by the error, the Dallas Court of Appeals reversed the trial court's judgment and remanded the case for a new trial. *Id.* at \*12.

The first two reasons cited by the Dallas Court of Appeals for reversal in *Hervey* are not present here. As to the first reason, there is no question that Stevenson was the robber of the gas station; thus, the trial court need not have included an instruction contemplating that the robbery was caused by the independent act of someone else.[12] The second reason is similarly inapplicable because there is no argument that there was any lesser-included offense that needed a separate instruction applying the law of voluntariness-of-conduct. As to the third reason—that the charge failed to make any distinction between a culpable mental state and voluntariness-of-conduct—we again note that the complained-of instruction largely tracks the

---

[12]And while Stevenson argues that the "jury should have been told that it must acquit [Stevenson] if it believed [Stevenson's] testimony that he had committed the robbery in an unconscious, dissociative blackout state," such an instruction would have likely been an impermissible comment on the weight of the evidence. *See Beltran de la Torre*, 583 S.W.3d at 617 (holding that a trial judge "may not express any opinion on the weight of the evidence or draw the jury's attention to particular facts"); *Brown v. State*, 122 S.W.3d 794, 801 (Tex. Crim. App. 2003) (holding that a trial court's jury instruction could violate Article 36.14 of the Texas Code of Criminal Procedure if it "obliquely or indirectly convey[s] some opinion on the weight of the evidence by singling out that evidence and inviting the jury to pay particular attention to it").

instruction approved by the Texas Court of Criminal Appeals in *Simpkins*.[13] *See* 590 S.W.2d at 135.

We thus reject Stevenson's argument that the trial court erred by failing to adequately instruct the jury on the law of voluntary acts, and we overrule Stevenson's sole issue.[14]

## IV. CONCLUSION

Having overruled Stevenson's sole issue, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: December 15, 2022

---

[13]We also note that the Texas Court of Criminal Appeals has granted the State's petition for discretionary review in *Hervey*.

[14]Because we hold that the trial court did not err by giving the complained-of jury instruction, we need not address Stevenson's claim of egregious harm. *See Kirsch*, 357 S.W.3d at 649.